Bates v. Ruddick et al.

## BATES *v.* RUDDICK *et al.*

Where on the third of March, 1852, G. and wife executed a mortgage to one L., on the west third of lots 10, 11, and 12, in block 30, in the city of Keokuk, to secure the payment of $350.00, which was recorded April 21, 1852; and where, on the 17th of May, 1852, G. sold to C. and G. the same part of lot 10, the deed for which was recorded December 30, 1852, and in January, 1853, G. sold the same portions of lots 11 and 12 to B., whose deed was recorded April 5, 1853; and where the mortgage was sold by L. to one F., and by F. to C. & G., who in August, 1853, commenced suit against G. and wife, to foreclose said mortgage on lots 11 and 12, without making B. a

Bates v. Ruddick et al.

party, in which suit a decree of foreclosure was rendered for $383.07, which amount included, by agreement with the agent of G., the sum of $54.36, for interest paid on money borrowed to purchase said mortgage, and attorney's fees for foreclosing the same ; and where B., pending the proceedings, appeared by his attorney, and filed a paper in the cause, stating the respective purchases of himself and complainants, and asking that the lots purchased by him, be held liable to pay two-thirds only of said debt, and that the lot purchased by C. and G. should be liable for the remaining third, of which paper no notice was taken in the adjudication of the cause; and where, by virtue of the decree of foreclosure, the lots were sold by the sheriff, under a writ without the seal of the court, and purchased by R. for the amount of the decree and costs, who received a sheriff's deed therefor ; and where B. then filed his bill, setting forth the foregoing facts, alleging that the decree of foreclosure was obtained by fraud, and in prejudice of his rights, and praying that the decree, as well as the sale to R., might be set aside, that R. might be enjoined from taking possession, or receiving the rents, under his pretended purchase, and the mortgage released, upon B. paying two-thirds of the mortgage debt; upon the hearing of which bill, the court found that B. purchased the property owned by him of G., without notice of the purchase of C. and G., and that the property of B., so purchased, was three times as valuable as that purchased by C. and G., and thereupon the court decreed, that the decree of foreclosure, and the sheriff's sale and deed to R. be set aside, so far as the said B, was affected—that B. and C. and G. should contribute to the satisfaction of the mortgage, in proportion to the value of the lots purchased by each—that R., the purchaser at the sheriff's sale, should recover three-fourths of the amount of his bid of B., the complainant, and one-fourth of C. and G., with six per cent. interest from the date thereof—that the incumbrance created by said mortgage be extinguished—that the decree of foreclosure stand as a judgment against G.—that C. and G. should assign three-fourths thereof to B.—and that each of the contesting parties pay one-third of the costs :

*Held*, 1. That as B. would have a right before foreclosure of the mortgage, to bring a bill to redeem the premises from the incumbrance, and determine the amount, so he may, if not made a party to the suit to foreclose, file a like bill, to correct any mistake made in a decree which injuriously affects his rights.

2. That as B. was not made a party to the suit for foreclosure, in the first instance, nor by any subsequent order of the court, and inasmuch as the mortgage suit was determined without any reference to the paper filed by him in said cause, and his right to appear in such suit was neither recognized nor admitted, that B. did not make such an appearance in the mortgage suit, as that he is concluded by the decree in that case, and precluded from filing a bill to correct mistakes in that decree.

3. That B. was only bound to pay his proportion of what was actually owing on the mortgage ; and that while the holder of the mortgage and the mortgagor might include the sum of $54.36, for interest paid for money borrowed to purchase the same, and attorney's fees, yet it was manifestly improper to

Bates v. Ruddick et al.

require B. to pay any part thereof, before he could hold his property divested of the mortgage lien.

4. That B. having purchased with notice of the mortgage, the mortgagee, by virtue of his prior lien, had the right to subject the property to the payment of his debt; but he had no right to subject it to the payment of any sum that the mortgagor might consent to include in the decree.

5. That B. should be required to pay his portion of the costs, in the foreclosure case, up to the time of rendering the decree, but that the costs subsequent to the decree he should not pay.

6. That the decree of the court below, so far as it charged the property purchased with the payment of the mortgage debt, in proportion to the respective value of each parcel, was correct, and that B. was properly required to pay three-fourths of the mortgage debt.

The value of land mortgaged, is what is presumed to have governed the mortgagee in taking his mortgage; and, by this value, should the respective liabilities of the subsequent purchasers be measured.

Where a portion of the mortgaged premises are subsequently sold, the mortgagor retaining the remaining part, the portion unsold should, in equity, first be subjected to the payment of the mortgage debt.

While the mortgage covers, and is a lien on, all the estate alike, yet the mortgagor, in addition to his legal obligation, arising as well from the mortgage, as his covenants in his deed to the subsequent grantee, is morally bound to pay the debt, and divest that which he has sold, of any incumbrance.

In like manner, on his death, the heir occupies his place, and, sitting in the seat of the ancestor or original grantor, is bound to discharge the debt, to the extent of the assets descending.

As between two grantees, however, purchasing different parcels of the incumbered premises, at different times, there is no more moral obligation on the one to pay, than the other; and in such cases, their interest is common— their rights are equal—and there should be equality of burden.

The junior, as well as the senior, purchaser of mortgaged premises, makes an absolute purchase; each pay a full consideration, and have a like reason to suppose that the mortgage debt will be paid, and their estates held alike divested of the incumbrance.

While each has purchased absolutely, yet, if the mortgage should not be discharged, they acquire no more than the right to redeem the parcel held by each; and neither should complain, if, by the decree which settles their respective rights, he is secured the equity thus acquired, upon equal terms.

## Appeal from the Lee District Court.

On the third of March, 1852, Gage and wife executed a mortgage to one Littler, on the west third of lots 10, 11, and 12, in block 30, in the city of Keokuk, to secure the sum of three hundred and fifty dollars. This mortgage was

recorded April 21, 1852.  On the 17th day of May, 1852, Gage sold to the defendants, Coffindaffer and Griffey, the same part of lot 10, which was recorded, December 30, 1852, and in January, 1853, he sold the same portions of lots 11 and 12, to Bates, the complainant, whose deed was recorded April 5th, 1853.  The mortgage was afterwards sold by Littler to one Ford, and by Ford to Coffindaffer and Griffey. In August, 1853, they commenced suit to foreclose said mortgage on lots 11 and 12, against said Gage and wife.  On the hearing of this case, it appears that there was found due on the mortgage, the sum of $383.09, which amount, by agreement with the agent of Gage, included the sum of $54.36, for interest paid on money borrowed to purchase said mortgage, and attorney's fees in foreclosing the same. Bates was not made a party, but pending the proceedings, he appeared by his attorney, and filed a paper in the cause, stating the respective purchases of himself and respondents, and asking that the lots purchased by him, be held liable to pay two-thirds only of said debt, and that the lot purchased by Coffindaffer and Griffey, should be liable for the remaining third.  The decree having foreclosed the mortgage as to the lots owned by Bates, an order of sale was issued, and the lots sold to Ruddick, for the sum of $418, being the amount of the decree, interest, and all costs.  This order was not, however, under the seal of the court, from which it issued, nor did it have any seal.  The sheriff having made a deed to Ruddick, in pursuance of said sale, complainant filed the bill in this case, setting forth most of the foregoing circumstances, alleging, also, that the decree of foreclosure was obtained by fraud, and in prejudice of his rights, and praying that the same, as well as the sale to Ruddick, might be set aside ; that Ruddick might be enjoined from taking possession or receiving the rents under his pretended purchase ; and the said mortgage released and canceled, upon complainant's paying two-thirds of the mortgage debt.  The bill was answered by the defendants, issue joined thereon, and the cause heard on depositions, exhibits, and pleadings.  On the final hearing, the court decreed, that the said judgment of

foreclosure, as also the sheriff's sale and deed to Ruddick, be set aside, so far ·as the said Bates was concerned. It was also found, that the said complainant purchased the property owned by him, of Gage, without notice, actual or constructive, of the purchase by Coffindaffer and Griffey, and that they should, therefore, contribute in proportion to the value of their purchase, to the satisfaction of said mortgage. It also appears, that the court found that complainant's property, so purchased, was three times as valuable as that purchased by Coffindaffer and Griffey, and that they should contribute to satisfy said mortgage in that proportion. And it was, therefore, decreed that Ruddick recover three-fourths of the amount of his bid of complainant, and one-fourth of Coffindaffer and Griffey, with six per cent. interest from the date thereof; that the incumbrance created by said mortgage, be extinguished; that the said decree of foreclosure stand as a judgment against Gage; that Coffindaffer and Griffey should assign three-fourths thereof to complainants, and that each of the contesting parties pay one-third of the costs. From this decree, complainant appeals.

*Miller & Beck*, for the appellant.

*S. F. Miller*, for Ruddick.

*Marshall & Moss*, for the other defendants.

WRIGHT, C. J.—In determining this case, we shall confine ourselves to the objections urged to the decree rendered by the court below. And in the first place, complainant claims that the decree foreclosing the mortgage, the sheriff's sale, and the deed made thereon, are void as to him. It is conceded by defendants, that the sale and deed convey no title, and were properly set aside, from the fact that the execution under which the sheriff acted, had no seal.

The only question in this part of the case, then, relates to the validity of the decree of foreclosure against complainant. No objection was made by defendants below, or here, to the

right of the complainant to bring this bill, or to its character. We have, then, before us, what we regard as an application, by a party interested in the property, to redeem the same from a lien created by a prior mortgage. And without determining whether it was, or was not, necessary to make him a party to the proceeding to foreclose such mortgage, we think, that as he would have a right, before foreclosure, to bring such bill, in order to determine the amount of the incumbrance, so he may, if not made a party, file a like bill, to correct any mistake made in a decree which injuriously affects his rights. The defendants insist, however, that complainant is concluded by that decree, from the fact that he made an appearance, when he filed the paper referred to in the statement of the case. In this view, we cannot concur. He was not a party in the first instance, nor by any subsequent order of the court. The case, indeed, appears to have been determined without any reference to this paper. If the party foreclosing the mortgage, had made him a party in his petition, prayed process against him, or sought to bring him in by notice, it would have been different. Here, however, instead of being in court, or so regarded, his right to appear, was not recognized or admitted.

Then, was there any such mistake in this decree of foreclosure, as should have been corrected? We think there was. Granting that complainant was only bound to contribute his proper proportion, and not to pay the whole of the mortgage (of which we shall speak hereafter), yet he was only bound to pay his proportion of what was actually owing. And, therefore, while the holder of the mortgage and the mortgagor, might include the sum of $54.36, for interest paid for money borrowed, to purchase the same, and attorney's fees, yet it was manifestly improper to require complainant to pay any part thereof, before he could hold his property divested of the mortgage lien. When he purchased, he had notice of this mortgage, and the mortgagee, by virtue of his prior lien, had the right to subject the property to the payment of his debt. But he had no right to subject it to the payment of any sum that the mortgagor might con-

sent to include in the decree. Such agreement would bind the mortgagor, or, as in this instance, Coffindaffer and Griffey, who were not only the holders of the mortgage, but also interested as purchasers, of part of the mortgage premises.

Complainant further insists, that he should not have been required to pay any portion of the costs attending the foreclosure of the mortgage. We see no reason why he should not pay his portion of the costs, up to the time of the decree. These costs were legitimately made in enforcing a lien upon property, which he had purchased, and which he might have avoided, by making payment before suit brought. The costs subsequent to the decree, he should not pay, however. The sale was set aside for an irregularity, for which he should not be responsible, and to avoid the effect of which, was one object of this bill. It would be manifestly inequitable, to require him to pay any portion of costs which accrued under a void writ, which he in no manner procured.

And, finally, it is insisted, that complainant should only have been required to pay two-thirds of this incumbrance, in proportion to the quantity that he purchased, instead of three-fourths, or in proportion to its value. In this respect, we think the decree is correct. Here was a mortgage on three distinct parcels of real estate. Subsequent to the lien, one party purchases one parcel, and another two. When required to contribute, shall it be in proportion to the quantity or *value* of the premises, by them respectively purchased. We clearly think in proportion to the value. The other position, has no one equitable consideration to sustain it, while the rule followed by the court below, is fully sustained by reason, as well as authority. It would be an unconscionable doctrine, that would require A. who bought a ten acre tract, of no more value than the one acre that B. might purchase, to pay in such cases, ten times as much as B. The value of the several parcels, is what is presumed to have governed the mortgagee in taking this mortgage, and by this value, should the respective liabilities of the purchasers be measured. This view is sustained by the following, among other, authorities: Story's Eq. Jur. §§ 477, 478, 483; *Al-*

*drich* v. *Corper*, 8 Ves. 391; *Dickey* v. *Thompson*, 8 B. Mon. 312; *Cheesebrough* v. *Willard*, 1 John. Ch. 415.

Indeed, upon this subject, we do not think there can be found any conflict—the authorities uniformly holding that value, and not quantity, should be the measure of contribution. Whether that value is to be determined with reference to the time of the mortgage, or subsequently, we are not called upon now to determine, as no such question is raised. We may say, however, that such value is in no case to be affected by improvements made by either purchaser.

But the defendants (Coffindaffer and Griffey) insist that complainant, having made his purchase after theirs, should be required to pay the whole incumbrance, or at least, that the lots purchased by him, should be sold, before they should be called upon to pay any part of the mortgage debt. On this subject, we are aware that the authorities are conflicting; and in this state the question has never, so far as we are aware, been decided. At one time, in New York, it was held, that such purchasers were bound to contribute in proportion to the value of their respective purchases. *Cheesebrough* v. *Willard et al.*, 1 John. Ch. 408; *Stevens* v. *Cooper*, Ib. 425. But these cases were regarded as shaken by the subsequent one of *Gill* v. *Lyon et al.*, Ib. 446, and still later, in the case of *Clowes* v. *Dickenson*, 5 Ib. 235, to have been entirely overruled. See, also, *James* v. *Hubbard*, 1 Paige, 228; *Gouverneur* v. *Lynch*, 2 Ib. 300; *Guion* v. *Knapp*, 6 Ib. 35. So that the rule in New York, now is, that the property purchased, is liable in the inverse order of its alienation. Such is the doctrine in Maine, South Carolina, and some other states. In Massachusetts, Ohio, Kentucky, and Tennessee, and other courts, it is held that the subsequent purchasers, shall contribute in proportion to the value of their respective estates, such value not to be appreciated, however, by any improvements placed thereon by the purchaser. *Parkman* v. *Welch*, 19 Pickg. 241; *Green* v. *Ranage*, 18 Ohio, 428; *Dickey* v. *Thompson*, 8 B. Monroe, 312; *Jobe* v. *O'Brien*, 2 Humph. 34; see, also, Story's Eq. Jur. § 1233,

Bates v. Ruddick et al.

where this latter doctrine is approved by the learned author, who states, also, that it is that maintained by the ancient, as well as modern, English cases on the subject; and such we believe to be the most equitable rule.  Where a portion of the premises mortgaged, are subsequently sold, the mort-gagor retaining the remaining part, it is uniformly held, that the portion unsold, should, in equity, first be subjected to the payment of the mortgage debt.   For while the mortgage covers, and is a lien on, all the estate alike, yet the mortgagor, in addition to his legal obligation, arising, as well from the mortgage, as his covenants in his deed to the subsequent grantee, is morally bound to pay the debt, and divest that which he has sold, of any incumbrance.   And in like man-ner, on his death, the heir, occupying his place, setting in the seat of the ancestor, or original grantor, is bound to dis-charge the debt to the extent of the assets descending; for there is no more equality of right between them, in such a case, than between the grantee and the ancestor, while liv-ing.   When we come to settle the question, however, as be-tween two grantees, purchasing different parcels of the in-cumbered premises, at different times, there is no more moral obligation on the one to pay, than the other.   Both of them have purchased premises that are alike affected by a lien, which neither created, or undertook to pay.   The purchased premises are liable to be sold, because of the failure of their grantor to discharge his undertaking, and not because of any failure on their part.   In such cases, their interest is com-mon—their rights are equal—and there should be equality of burden.   It is difficult for us to see why the last pur-chaser, any more than the first, sits in the seat of the grantor; and yet this would appear to have been the reasoning used, and the ground of the decision, in *Clowes* v. *Dickenson*, 5 John. Ch. 240.   And in those cases, where the question arises between the grantor and a subsequent purchaser, the grantor, or the land still held by him, is liable, because the debt is the personal obligation of the debtor, and not of the grantee.   But where is the personal obligation resting on the last grantor, more than on the first?

It is urged that the grantor, by aliening the unsold portion of the estate, cannot throw the burden of the mortgage, or a ratable part of it, back upon the first purchaser. It should be remembered, however, that we are not determining the relative equities of the grantor and purchaser, but of two purchasers. The personal obligation of the debtor remains the same, after, as before, the second sale.

The debtor is not inhibited from making a further sale, by reason of the covenants in his first deed. This power to sell, is as well known to the first purchaser, as any other fact connected with the transaction. It is the inability of the debtor to pay his debt, that creates the necessity for enforcing the lien, and not any failure on the part of the last purchaser. The junior, as well as the senior, purchaser, makes an absolute purchase; each pay a full consideration, and have a like reason to suppose, that the mortgage debt will be paid, and their estates held alike divested of the incumbrance. While each has purchased absolutely, yet, if the mortgage should not be discharged, they acquire no more than the right to redeem the parcel held by each, and neither should complain, if, by the decree which settles their respective rights, &c., he is secured the equity thus acquired, upon equal terms. We therefore conclude, that the decree of the court below was correct, in charging the purchasers with the payment of the mortgage debt, in proportion to the respective values of each parcel.

But as complainant should not have been charged with any part of the sum of $54.36, included in the decree of foreclosure, nor yet with the costs attending the mortgage sale, the decree will be so far reversed, and in every other respect affirmed.

A *procedendo* will issue, directing a decree to be entered, in accordance with this opinion.