GRIFFITH, Admr., v. LOVELL *et al.*

## I. Per CURIAM.

1. **Judgment: RES ADJUDICATA.** A decree canceling a deed of trust, rendered in a proceeding in which the heirs of the trustee and the payee of the note secured by the trust deed are made parties, but in which a person to whom the note had been assigned was not made a party, does not affect the rights of such assignee as to the debt evidenced by the note.

## II. Per DILLON, Ch. J., WRIGHT, J., concurring.

2. **Interest: ON CONTRACT AGAINST RESIDENT OF REBELLIOUS STATE.** Where the holder of a promissory note, during the late rebellion, resided in a rebellious State, while the maker, during that time, resided in a northern and unrebellious State, the rule dictated by natural justice should be adopted, that, as the debtor had the use of the money, the creditor should be allowed to recover interest according to the terms of the contract.

## III. Per COLE and BECK, JJ.

3. —— As by the act of congress and the proclamation of the President in pursuance thereof, the debtor was prohibited from paying the creditor his debt, interest thereon should cease — adopting, by analogy, the reason or principle of the rule applicable to wars between independent nations.

## IV. Per CURIAM.

4. **Mortgage: CONTRIBUTION.** Where a mortgage or deed of trust covers real estate which has been sold in parcels to different persons, all of the lands thus covered and sold are liable to contribute ratably to the discharge of the incumbrance.

5. —— But a purchaser of one portion cannot have the mortgage debt made out of the balance to the extent of a payment claimed to have been made by him upon the note secured by the mortgage, when it appears, that such payment was no part of the purchase-money, and that it was made a considerable time before his purchase.

*Appeal from Dubuque District Court.*

TUESDAY, DECEMBER 15.

DEED OF TRUST — PAYMENT — ESTOPPEL — EFFECT OF DECREE AGAINST TRUSTEE ALONE CANCELING THE TRUST DEED — INTEREST — CONTRIBUTION. — This is a proceeding to foreclose a deed of trust from William Y. Lovell to John J. Dyer, trustee, made to secure the payment of a note for $2,000 to A. M. Newman. This deed of trust was recorded October 5, 1853. On the back of the note. is the following assignment:

"March 16, 1857.

"For value received, I assign the within note to Rhesa Allen." A. M. NEWMAN.

Allen died in 1865, and the plaintiff is his administrator. Lovell, after the recording of the deed of trust, sold the lands covered by it. Lovell and his subsequent grantees are made parties hereto. Margaret Langton, P. Gillespie, Mary Julia Kiger, and Charles Quade (subsequent purchasers of different portions of the land), answered. All the other defendants made default.

The defendants who answer controvert, upon the grounds stated in the opinion, the plaintiff's right to a decree.

On the hearing, the court dismissed the petition.

The plaintiff appeals.

*Griffith & Knight* for the appellant.

*De Witt C. Cram* for Mary J. Kiger.

DILLON, Ch. J. — The plaintiff having produced the. note and proved the indorsement thereof, by the payee, Newman, to his intestate, and having been allowed to introduce a certified copy of the deed of trust, and it being

admitted that the original deed of trust was duly recorded October 5, 1853, and that the plaintiff was the administrator of the assignee and holder of the note, a *prima facie* case for a recovery was established. We notice very briefly the various defenses relied on to defeat the plaintiff's action:

1. *Payment of the note by Lovell, the maker.* We have carefully examined the evidence on this subject introduced by the defendants in the main cause, and find that it falls far short of establishing the alleged payment. In argument in this court, the defendants, to prove payment, rely in part upon certain admissions of the plaintiff's intestate made in 1863 to Tho. W. Kiger, and testified to by him. But the certificate of the presiding judge at the trial distinctly shows that Kiger's deposition formed no part of the evidence in the main cause, but was introduced only to support the cross-bill of his wife, which was submitted as a separate cause, but in connection with the main suit. If, however, this evidence be treated as properly before the court in favor of all of the defendants making defense, it would not change the conclusion of the court above stated.

It would illustrate no principle of law to review the mass of testimony introduced to show and to negative the alleged payment, and we content ourselves with the announcement of the result, assuring counsel that both the record and their arguments have been attentively considered.

2. Alleged agreement of plaintiff's intestate to *discharge the deed of trust*, and its delivery pursuant thereto to Lovell, who was to execute other security for the debt. This defense is inconsistent with the idea that the debt had been paid, but proceeds upon the opposite idea, that it was subsisting at the date of the alleged agreement. There is evidence that Lovell was in possession of the

Griffith v. Lovell.

original deed of trust; but that he executed or that the plaintiff's intestate ever accepted any substituted security, is not proved. An unexecuted promise by, Lovell (even if made) to substitute other securities, would not, without more, operate to satisfy and discharge the lien of the deed of trust.

It is our opinion upon the testimony that the alleged agreement is not satisfactorily established, and that there is nothing shown against the plaintiff's intestate which can or should operate to estop his administrator from enforcing the deed of trust against Lovell and his subsequent grantees.

3. *The Langton decree.* The note in question was assigned by the payee to Allen, plaintiff's intestate, March 16, 1857. This was known to Lovell and done at his instance. He knew it was held by Allen and had not been paid. Yet, in 1863, Lovell, as the attorney for Mrs. Langton, a subsequent grantee of his, files a petition against the administrator and heirs of Dyer, the trustee, and against Newman (the payee), *omitting to make Allen a defendant,* praying for a decree that the deed of trust be canceled. This relief was asked upon the ground as alleged in the petition "that the whole amount mentioned in said note was paid by Lovell to Newman, and that but for the death of the said Dyer, trustee, the trust-deed would long since have been satisfied upon the records of the county."

1. JUDGMENT: *res adjudicata.*

In 1864 a decree was entered finding that the debt mentioned in the trust-deed had been fully paid, and ordering the same to be canceled of record, the plaintiff's attorney *consenting* that the plaintiff should pay the costs.

It is almost unnecessary to observe that Allen, the then holder of the note, and known to. be so by the plaintiff's attorney, not being a party to this proceeding,

the decree rendered therein is, as to the debt evidenced by the note, *res inter alios acta*. The legal representatives of the trustee were, however, made parties, and if any of the defendants had proved that they made their purchases after the entry of the decree, and on the faith of it, and especially if those purchases were of lands held by Mrs. Langton, we would have had a very different and much more difficult question for decision from that now presented.

All of the defendants who make defense, except Charles Quade, are shown to have purchased *before* this decree was entered, and hence they could not have been misled by it. Quade alleged that he purchased afterward, but did not introduce any evidence to prove this allegation.

4. The record states " that it was admitted as a fact in the cause, that during the late war of the rebellion, Rhesa Allen (plaintiff's intestate) lived in the State of Virginia, and that the defendant, William Y. Lovell, during that time, resided in Iowa, and in Montana territory." Lovell makes default, and does not contest the plaintiff's right to recover interest. The above is the extent of the admission made. It is the subsequent purchasers who now insist that plaintiff is not entitled to interest on the debt during the war—in other words, that the war suspended the interest.

*2. Interest: on contract against resident of rebellious State.*

Until the effect of the rebellion upon the question thus presented, shall be decided by the Supreme Court of the United States, my brother Wright, and myself, prefer to adopt the rule dictated by natural justice, and hold, that, as the debtor has had the use of the money, the creditor should be allowed interest; indeed, as the interest is given by the contract, we do not see how the right to it can be denied, any more than the right to the principal. Such is the opinion of Chase, Ch. J., in *Shortridge* v. *Mason* (Am. Law Review, vol. 2, p. 95.)

My brothers COLE and BECK are of opinion, that, since, by the act of congress, and the proclamation of the President in pursuance thereof, the debtor was prohibited from paying the creditor, interest should cease during the war, adopting by analogy the reason or principle of the rule applicable to wars between independent nations. See *Tucker* v. *Watson*, Am. Law Register, Feb. 1867 ; *Jackson Ins. Co.* v. *Stewart*, id., Oct. No. 1867. The reason or principle of which rule being, that as it is unlawful for the debtor to pay, he should not be chargeable with the interest — they not regarding this rule as in necessary conflict with the doctrine of *Shortridge* v. *Mason, supra.*

5. *As to Mrs. Kiger's cross petition.* She alleges that she owns 320 acres of the land embraced in the deed of trust sought to be foreclosed ; that she purchased the same of Tho. W. Kiger ; that they were of equal value with the balance of the lands described in the trust deed, and that Tho. W. Kiger, her grantor, paid on the note secured by the deed of trust $905 on the 1st day of April, 1854, and $200 on the 21st day of January, 1856. 'Upon these facts, she asks, in case a decree be rendered for the plaintiff, that her lands be credited with the money thus paid, and that, to this extent, the plainti's debt be first made from the other lands in the trust deed. Gillespie, the owner of a large portion of these other lands, resists this claim.

3. MORTGAGE: contribution.

That Tho. W. Kiger paid to Newman, the then holder of the note, these two sums, is not disputed ; and the same are credited on the note as having been received from Kiger.

There is no claim by any of the parties that these sums were not paid, and the plaintiff only claims a decree for the balance. But the point made by Mrs. Kiger is, that this decree shall be made, to the extent of this $1,105, out

of the lands not owned by her. Her attorney thus bases her claim to this relief: " Her lands have already contributed $1,105 toward the payment of this debt, and should not again be called on to pay that sum."

If it had been established that this payment was made to relieve these lands, and that the amount had never been repaid by Lovell, there would be great equity in the claim made. But the testimony introduced by Mrs. Kiger to establish this equity completely overthrows it. We allude to the testimony of Tho. W. Kiger, her husband and grantor.

His deed from Lovell is dated October 7, 1857, which is *after* both of the payments to Newman on the note secured by the deed of trust. In his testimony, he says he purchased the lands of Lovell, April 24, 1855, which is *after* the $905 payment, but *before* the $200 payment, to Newman.

He is asked " to state what relation, if any, such payments to Newman had to or with the consideration or purchase money paid by you for that part of the lands covered by the trust deed and purchased by you of Wm. Y. Lovell ? "

"*Answer.* The payments I made on the note held by Dr. Newman against Wm. Y. Lovell and secured by the trust deed, was no part of the purchase money for the land I bought of Lovell — the land having been purchased by me more than a year after I made the payments on the said notes."

This is all. He does not say why he made these payments, but he does say that he had, at that time, no interest in the land, not having yet purchased it of Lovell. He must have made the payments at Lovell's request, and he does not state that he was not repaid by Lovell, but only that this amount formed no part of the purchase money paid for the land.

Under these circumstances neither he nor his subsequent grantee has an equity to have the debt due the plaintiff first made to the extent of this $1,105, from the lands of the other puchasers.

The decree of the District Court is reversed, and the cause is remanded with directions to enter a decree in the plaintiff's favor, to pay which (if not paid by Lovell), all of the lands covered by the deed of trust, shall be liable to contribute ratably, according to the settled doctrine of this court. The sum or amount for which the decree shall be entered, will be ascertained and determined by the District Court.

It follows that the cross-petition of Mrs. Kiger should be dismissed.

Reversed.