BARNEY v. MYERS *et al.*

1. **Mortgage:** SUBSEQUENT SALE OF PARCELS: LIABILITY OF. It is the settled doctrine of this State, that where incumbered real estate is subsequently sold by the mortgagor in parcels to different purchasers, each must contribute proportionately to the discharge of the incumbrance, and not in the inverse order of their alienation.

2. —— FORECLOSURE. Where a mortgagee in a mortgage covering several distinct lots or parcels of real estate, releases some of them, sold by the mortgagor, upon the payment of amounts proportionate to the value which they bear to the mortgage debt, and all the remaining lots, except one in the possession of a purchaser from the mortgagor, are subsequently sold under foreclosure of the mortgage for amounts not proportionate to the actual value which they bear to the mortgage debt, though without any fault on the part of the mortgagee, the remaining lot which has not been released, and the purchase money of which was not applied to the mortgage debt, is liable in the hands of the purchaser for, and may be subjected to the payment of, any balance of the mortgage debt remaining unpaid.

Barney v. Myers.

*Appeal from General Term, First District (Lee County).*

FRIDAY, APRIL 8.

ACTION in equity to foreclose a mortgage upon nine city lots. The defendant, Bridget Myers, became the owner of one of the lots ,by purchase under the mortgagors, after the mortgage was made and recorded ; and the controversy is now only upon the proportion of the mortgage debt her lot should bear, certain other lots having been released by the mortgagee. The cause was referred to a commissioner whose report was made the basis of the judgment of the District Court, which was affirmed by the General Term. No material controversy arises as to the correctness of the report upon the facts. Indeed, we find the report quite correct on the facts, and it is unusually able, clear, and as concise as practicable. It is as follows :

" The undersigned, the commissioner to whom the above entitled case was referred by order of the court, submits the following report :

. " He finds that on March 8, 1853, said defendants, Hughes and Hixon, executed to one Charles Mason their mortgage deed of that date, conveying lots 3, 4, 9, 10, 11 and 12, b. 201, and lots 1, 2 and 3, b. 153, Keokuk, Iowa ; that said mortgage was filed for record March 11, 1853, and duly recorded in records of Lee county, Iowa ; that it was given for the purchase money or a part thereof of said land ; that it was conditioned to be void on the payment of the following sums :

On March 1, 1854 ............................. $250
On March 1, 1855 ............................. 250
On March 1, 1856 ............................. 250
On March 1, 1857 ............................. 250
On March 1, 1858 ............................. 300

being $1,300 in all, with eight per cent per annum interest, payable annually, and that it was agreed in said mortgage, "that whenever any portion of principal or interest becomes due by virtue hereof, it shall draw interest thereafter at the rate of ten per cent per annum till paid;" and further, "that if we do not promptly pay all taxes and assessments on the land herein conveyed, when the same fall due, the said Mason, his heirs or assigns, may pay the same, and the amount so paid shall thereafter be added to the principal debt, secured by this mortgage, and shall also draw interest at the rate of ten per cent per annum until paid;" and that said mortgage was duly assigned to plaintiff Barney, on April 17, 1856. He further finds, that on December 28, 1858, a suit of foreclosure was commenced by plaintiff Barney, on said mortgage, against said Hughes and Hixon (no other persons being made parties defendant), and that on May 30, 1861, a decree was rendered, finding the sum of $2,412.28 to be due on said mortgage, and ordering the sale of said lots 3, 4, 9, 10 and 12, b. 201 (lot 11, b. 201 having been released), to pay off said sum, with ten per cent interest thereon and costs.

" That on July 19, 1865, plaintiff filed in this court his affidavit and motion to correct said decree, for the reason that lots 1, 2 and 3, b. 153, were omitted in said decree by mistake; and that on September 7, 1865, a further decree was rendered correcting and reforming said decree of May 30, 1861, by inserting lots 1, 2 and 3 in b. 153, and ordering the sale of said lots, and lots 3, 4, 9, 10 and 12, b. 201, to pay said sum of $2,412.28, and interest at ten per cent and costs, and that said Hughes and Hixon were the only parties defendant to this motion and decree.

" He further finds, that on November 29, 1866, plaintiff Barney filed another petition (being the one in this case

No. 933 ch'y), making said Hughes and Hixon and said Bridget Myers and others, parties defendant, claiming that in February, 1865, he had paid the sum of $240.86 taxes and assessments levied on said lots 1, 2 and 3, b. 153, by the city council of Keokuk, and that on or about November 7, 1866, he had paid the sum of $216.95 taxes and assessments levied on lot 10, b. 201, by the city council of Keokuk, which were paid under the provisions of said mortgage."

"That on February 5, 1867, another decree was rendered (being in said case No. 933, ch'y), finding that lots 11 and 12, b. 201, have, for a proportional consideration, been released from said mortgage, and finding the further sum of $489.10 for the taxes aforesaid to be due from defendants Hughes and Hixon, with ten per cent interest thereon, in addition to the said sum of $2,412.28, found due by decree of May 30, 1861, and ordering the sale of said lots 1, 2, 3, b. 153, and lots 3, 4, 9, 10, b. 201, to pay said sums.

"He further finds that said Bridget Myers, in this suit of foreclosure No. 933, was served by publication only, although during all these proceedings she had resided on lot 9, b. 201, Keokuk, Iowa, and that on September 10, 1867, by order of said court, the default rendered against her in this case was set aside, and said action, as to her, ordered to be retried. That on July 2, 1867, plaintiff sued out of the office of the clerk of said court a special execution on said decree rendered May. 30, 1861, and said decree rendered September 7, 1865, and that on July 30, 1867, the sheriff of Lee county, Iowa, under and by virtue of said execution, sold at public sale.

| | | |
|---|---|---|
| Lot 1, b. 153, to Mrs. McGugin for ......... | $150 | 00 |
| " 2, " " " ......... | 145 | 00 |
| " 3, " " to A. L. Connable for.......... | 130 | 00 |
| " 10, " 201 to John and Isaac Leisy for..... | 600 | 00 |
| " 3, " " to Hiram Barney for.......... | 800 | 00 |
| " 4, " " " ......... | 700 | 00 |
| | $2,525 | 00 |

and executed and delivered deeds to said parties therefor; that said lots were sold in the above order, and said sales amounted to $2,525; that the costs of said sale were $55.35, leaving the sum of $2,469.65 to be credited on said decrees.

"He further finds, that, on March 15, 1854, there was paid on said mortgage the sum of $104, being the interest thereon to March 8, 1854; that on June 13, 1855, there was paid thereon the sum of $42; that on March 9, 1860, there was paid thereon the sum of $229.54, and also $44.66 taxes, which had been previously paid by plaintiff; that on the payment of said sums of $229.54 and $44.66 said lot 11, b. 201, was released from the operation of said mortgage, and that said sums were the just proportion of said debt and taxes which said lot 11 should bear, according to the actual relative value of all of said lots at the time of the execution of said mortgage, and at the time of said release.

"That on May 4, 1864, there was paid on said decree of May 30, 1861, the sum of $500, and thereupon, in consideration of said payment, lot 12, b. 201, was released from the operation of said mortgage, and that said $500 was more than the just proportion of said debt which said lot should bear, according to the actual relative value of all of said lots at the time of the execution of said mortgage, and at the time of said release.

"That on July 31, 1867, there was paid on said decrees, by said execution sales, the sum of $2,469.65 as aforesaid.

"That of said sum of $2,412.28, for which said decree was rendered on May 30, 1861, the sum of $698.43 was for city taxes paid by plaintiff on August 12, 1859, on the lots on which said mortgage was a lien.

"That at said execution sale lot 9, b. 201, was not sold by the sheriff, the said plaintiff and defendant, Bridget Myers, agreeing that said lot should not then be sold, but be subject to future litigation. He further finds, that on July 23, 1856, one James Watson, having derived title to said lot 9 by chain of deeds from said Hughes and Hixon, sold and conveyed same to defendant, Bridget Myers, and on said July 23, 1856, executed and delivered to her a warranty deed therefor, which deed was filed for record September 13, 1856, and duly recorded in the records of Lee county, Iowa; that the consideration paid for said lot by defendant Bridget Myers, was $1,200; that she took actual possession of said lot in August, 1856, and has since erected and placed upon the same valuable improvements, consisting of a dwelling-house, cistern, fences, etc., and that she paid the taxes thereon during the times referred to in the pleadings in this case, except the city taxes for the year 1859.

"He further finds, that on the 28th day of April, 1859, said J. C. Hughes, being then the owner of said lots 11 and 12, b. 201, sold and conveyed the same by warranty deed of that date to Jacob Baehr and John Leisey, for the consideration of $2,000, which deed was filed for record on June 16, 1859, and duly recorded in records of said county; that afterward, to wit: on or about March 9, 1860, under another agreement between said Baehr and Leisey and said J. C. Hughes, said Baehr and Leisey conveyed said lot 12 to Amanda T. Hughes, wife of said J. C. Hughes; and that afterward, to wit: on or about

May 4, 1864, said Amanda T. Hughes and J. C. Hughes, her husband, sold and conveyed said lot 12 to said Baehr and Leisey for the consideration of $1,000, and that said Baehr and Leisey have, since purchasing said lots, erected valuable improvements thereon.

" He further finds, that there is due on the said decrees, rendered on May 30, 1861 and September 7, 1865, after deducting the $500 paid May 4, 1864, and the $2,469.65, realized from said execution sale on July 31, 1867, the sum of $1,054.22; and on the decree rendered on February 5, 1867, the sum of $581.24, making altogether the sum of $1,635.46. And the commissioner finds that the portion of said sum of $1,635.46, which lot 9, b. 201, should bear, is the sum of $408, which is the just proportion thereof, according to the actual relative value of said lots at the time of the execution of said mortgage, and that on the payment of said sum of $408 by defendant Bridget Myers, to plaintiff, she should be allowed to redeem said lot 9, b. 201, from said mortgage and decrees.

" J. L. RICE,<br>" <i>Commissioner.</i>"

Judgment of the District Court accordingly, which, on appeal to the General Term, was affirmed. The plaintiff now appeals to this court.

*H. Scott Howell* for the appellant.

*D. F. Miller* for the appellee.

COLE, Ch. J. — It is the settled doctrine of this State, that incumbered real property, conveyed subsequently in parcels to different grantees, must contribute proportionately to the discharge of the incumbrance, and not in the inverse order of alienation. *Bates* v. *Ruddick*, 2 Iowa, 423; *Massie* v. *Wilson et al.*, 16 id. 390.

Whether the amount to be paid by each grantee shall be proportionate to the value of the parcels at the date of the incumbrance, or at the time of the contribution, is an immaterial question in this case, since the commissioner finds that the amount paid for the release of the mortgage upon the lots released was equal to their proportionate share upon their value, both at date of mortgage and time of payment.

The difficulty in this case seems to arise from the fact that several of the parcels or lots, which were sold under the mortgage foreclosure, did not sell for their proportionate share, whereby an undue proportion is left as a lien upon the lot of the defendant Myers. But the failure of said lots to bring their full value at such sale, which, for aught that appears, was fair and regular in every particular, was, in no sense, the fault of the mortgagee or plaintiff. The presumption of law is, in such sales, that the property sold for its fair value at that time. There being nothing to disturb that presumption in this case, it must of course prevail. The lots which were released voluntarily by the mortgagee did pay their just and full proportion, and were rightfully released. Of their release the defendant Myers could not complain. The result whereby the lot of the defendant Myers has to pay an undue proportion, comes from circumstances surrounding the case, and not from the fault or wrongful conduct or act of the plaintiff. The plaintiff is entitled to the payment of his mortgage debt from the mortgaged property. If the mortgagors are solvent, such solvency will inure to the benefit of the defendant Myers, through the covenants of warranty. There seems to be no escape from the conclusion that the defendant's lot must be subjected to the payment of the balance of the mortgage debt.

Reversed.