# THE COLORADO LAW REPORTER.

Vol. I.]                    DENVER, JUNE, 1881.                    [No. 10

## FASSETT *et al. v.* MULOCK.

*(Supreme Court of Colorado, December Term, 1880—Appeal from the District Court of Fremont County.)*

MORTGAGE BUT INCIDENT OF DEBT. A mortgage is but an incident of the debt it secures, and an assignment of the debt carries the mortgage with it.

RELEASE—MORTGAGEE NO POWER TO, AFTER HAVING ASSIGNED THE DEBT. After having assigned the debt secured by the mortgage, the power of the mortgagee ceases, and a release made by him is a nullity—being in fraud of the rights of his assignee—and such attempted release will be cancelled and the mortgage lien enforced by the chancellor.

MORTGAGE LIENS—ORDER IN WHICH SATISFIED—SALE OF MORTGAGED PROPERTY. Where an estate is subject to a mortgage, and is sold by the mortgagor in parcels at different times, the mortgage shall be satisfied—first, out of that portion of the estate still in the hands of the mortgagor, and then out of the parcels aliened, in the inverse order of their alienation—and this rule applies equally where the mortgagor has given mortgages of different dates on the estate.

PURCHASERS—CONSTRUCTIVE NOTICE. The purchaser of mortgaged premises has constructive notice of the incumbrance, and takes it subject thereto, and that one stands in the relation of mortgagee and owner of the first mortgage, as well as purchaser, can make no difference in the application of the rule. A mortgagee is at liberty to deal with the mortgaged property, and purchase any portion of it, but, if he do so, there is no reason for exempting him from the equities which attach in the case of any other purchaser.

LIENS—GRANTEE AND MORTGAGEE. As between grantee and mortgagor, the residue remaining in the hands of the mortgagor shall be applied to the payment of the mortgage debt; as between the grantee and mortgagee, the latter being a creditor with two funds, is required to proceed, primarily, against the fund upon which the grantee has no claim.

ESTATES—EQUITABLE AND LEGAL. The rule that when the equitable and legal estates unite in the same person, the equitable is merged in the legal estate, is not inflexible. Courts of equity are accustomed to treat the estates as merged or separate, as substantial justice may require.

OBJECTION TO PLEADING—not made in the court below will not be noticed on appeal.

ELBERT, C. J.   June 15, 1871, William H. McClure executed and delivered to the appellant, Elisha Fassett, his promissory note for the sum of $2,000, and secured the same by a mortgage of even date on lots thirteen, fourteen, fifteen and sixteen, in block nine, in Cañon City.   April 27, 1875, Fassett assigned this note to one Reynolds.   July 14, 1875, Fassett entered of record satisfaction of the mortgage.   August 4, 1875, Reynolds in turn transferred the note to Mulock, the appellee, but without indorsement.   April 25, 1873, McClure executed a second mortgage to Fassett on lot thirteen, to secure the payment of $2,100, and April 24, 1875, a third mortgage on the same lot, to secure the payment of $1,662.50.   October 31, 1876, McClure, at the instance of Fassett, and in satisfaction of the two last named mortgage debts, conveyed by deed lot thirteen to Mrs. Phelps, Fassett's daughter.   June 13, 1876, McClure gave another mortgage on lots fifteen and sixteen, to his brother, James McClure, to secure the payment of $2,500.   December 22, 1875, McClure executed a mortgage to Mulock, the appellee, on lot fourteen, to secure the payment of $3,000.   February 24, 1877, McClure conveyed by deed, lot fourteen to Mulock, in satisfaction of this last mortgage.   All of these several mortgages and deeds were duly recorded at or about the time of their execution. May 29, 1877, Mulock filed his bill against Fassett, Mrs. Phelps, William and James McClure, praying, *inter alia*, the cancellation of the release made by Fassett of the first mortgage, and its foreclosure.

By stipulation of the attorneys of the complainant and James McClure, the suit was dismissed as to the latter.

Upon final hearing the court decreed: "That the deed of conveyance bearing date October 31, 1876, made and executed by Wm. H. McClure and Elizabeth McClure to Rozilla Phelps, for lot thirteen, in block nine, in the town of Cañon City, etc., be, and the same is hereby set aside, vacated and declared null and void, and of no effect whatsoever against the plaintiff; that the entry of the release made by defendant aforesaid, on the margin of book A, folio 260, of the records of Fremont county, releasing the premises described in the mortgage therein recorded and described in the said bill of complaint, be, and hereby is cancelled

and declared null and void, so far as the same applies to or affects lot thirteen, in block nine, and as against the rights of plaintiff under said mortgage deed; that this cause be referred to John Wilson, to compute the amount due from Wm. H. McClure to the plaintiff upon the note and mortgage, and report the same to the court for further order."

Upon the incoming of the master's report, showing $3,631.95 due on the note and mortgage, the court decreed: "That Wm. H. McClure, within sixty days from the date aforesaid, November 9, 1878, pay to the plaintiff the said sum of money, with interest at ten per cent. per annum, until paid, and costs, and in default, all the premises mentioned in the bill, to wit: lot thirteen, in block nine, in Cañon City, or so much thereof as may be necessary, be sold for cash in hand, at, etc.; that the sheriff make said sale upon public notice first given, etc."

From this decree Fassett and Mrs. Phelps appeal.

It is a familiar principle that a mortgage is but an incident of the debt it secures, and an assignment of the debt carries the mortgage with it. 1 Hilliard on Mort., 238 *et seq.*

The indorsement on the note by Fassett to Reynolds is in terms an assignment, and there is nothing in the evidence that would warrant us in saying, as claimed by the appellants, that the parties intended a payment instead. It carried with it the mortgage by which it was secured, as did also Reynolds transfer to Mulock, notwithstanding the note was not indorsed by Reynolds.

Respecting the transfer by Reynolds to Mulock, there is little, if anything, to justify the strictures of counsel in any fair treatment of the evidence. It appears to have been the ordinary case of a person with money to loan investing in a first mortgage security.

After assigning the note, Fassett's power over the mortgage ceased, and his release of record was a nullity. 1 Hilliard on Mort., 241, 250, 251; *Ex. of Swartz* v. *Lerst*, 13 O. St., 420; *Cutter* v. *Havan*, 8 Pick., 490; *Phelan* v. *Olney*, 6 Cal., 478.

It was in effect a fraud, and the fact that he held two prior mortgages on a part of the property released, together with the fact that the release was not made until several months after the assignment, would warrant us in treating it as a fraud in fact. The evidence called for, and justified the decree of cancellation.

The cancellation, however, should have been entire and unqualified, as prayed for in the bill, and not limited to lot thirteen. He who seeks equity must do equity, and it is manifestly inequitable to allow the complainant to repudiate the fraud in part, and adopt it in part, as it may chance to work an injury or secure a benefit.

The restored mortgage which the plaintiff sought to foreclose covered lots thirteen, fourteen, fifteen and sixteen, and was foreclosed only as to thirteen.

Against this feature of the decree counsel for the appellants make two points: (1) That lots fourteen, fifteen and sixteen should have been first sold to satisfy the mortgage. (2) That if James McClure sustains the character of a *bona fide* purchaser of lots fifteen and sixteen, then lot fourteen should have been first sold to satisfy the mortgage.

These objections are founded on the rule, that where an estate is subject to a mortgage, and is sold by the mortgagor in parcels at different times, the mortgage shall be satisfied first out of that portion of the estate still in the hands of the mortgagor, and then out of the parcels claimed in the inverse order of alienation.

Touching this rule, there is some conflict of authority.

Kentucky and Iowa hold to the principle of equality of contribution among all the purchasers of the mortgaged premises, based on the value of the several parcels. *Dickey* v. *Thompson*, 8 B. Monroe, 312; *Bates* v. *Ruddick*, 2 Iowa, 430 (Cole's edition); *Griffith* v. *Lovell*, 26 Iowa, 226; *Barney* v. *Myers et al.*, 28 Iowa, 472.

In Ohio and Massachusetts there is a conflict of authority. *Com. Bank, etc.*, v. *W. B. Bank*, 11 Ohio, 444; *Green* v. *Ramage*, 18 Ohio, 428; *Allen* v. *Clarke*, 17 Pick., 47; *Chase* v. *Woodbury*, 6 Cush., 143; *Parkman* v. *Welch*, 19 Pick., 231.

New York, Vermont, New Jersey, Virginia, New Hampshire, Maine and Illinois hold to the rule that mortgaged premises are to be subjected to the liens in the inverse order of their alienation. *James* v. *Hubbard*, 1 Paige, 234; *Jenkins* v. *Freyer*, 4 Paige, 53; *Guion* v. *Knapp*, 6 Paige, 35; *Patty* v. *Pease*, 8 Paige, 277; *Skeil* v. *Sparkes*, 8 Paige, 182; *Lyman* v. *Lyman*, 32 St., 79; *Shanon* v. *Marsells*, 1 Saxton, 413; *Wickoff* v. *Davis*, 3 Green Ch., 224; *Henkle* v. *Alslatt*, 4 Gratt., 284; *Jones* v. *Myreck*,

8 Gratt., 179; *Brown* v. *Simms*, 44 N. H., 475; *Holden* v. *Pike*, 24 Maine, 427; *Shepherd* v. *Adams*, 32 Maine, 63; *Iglehart* v. *Crane*, 42 Ill., 267.

The reason of the rule is clearly and forcibly stated by Mr. Justice Lawrence, in *Iglehart et al.* v. *Crain & Wesson, supra*:

"If a mortgagor conveys a portion of the mortgaged premises, retaining a portion himself, it is familiar law, and admitted by all the cases, that, as between the mortgagor and his grantor, that portion retained by the mortgagor should be first applied to the payment of the mortgage. An equitable lien attaches for this purpose in favor of the grantee, as against the parcel held by the mortgagor. The equity of this rule is apparent, and the plain ground that a man's own property should be first applied to the payment of his own debts, and when a court of chancery requires a mortgagor first to exhaust that part of the mortgaged property still held by the mortgagor, it is only another application of the principle so long and so firmly settled by courts of equity—that where there are two creditors standing in equal equity, one of whom has security upon two funds, and the other upon only one of the two, the former is required to proceed primarily against the fund upon which the latter has no claim. The justice of first subjecting to the payment of the mortgage so much of the mortgaged property as may still remain in the hands of the mortgagor, cannot be denied. If, then, this species of equitable lien has attached in favor of a purchaser of a part of the mortgaged premises against the residue in the hands of the mortgagor, how is this residue to be considered as discharged from the liens merely by a sale and conveyance of it to a third person taking with notice of all the facts? The purchaser with notice simply steps into the shoes of the mortgagor. He can claim no equity which would displace that of the prior grantee of the other portion of the mortgaged premises, because having voluntarily and knowingly become the purchaser, he cannot by such act and at his own mere volition displace or impair the equity of another."

It will be seen from the foregoing as well as from a perusal of the authorities, that the doctrine of subjecting mortgaged property to the payment of the mortgage debt in the inverse order of alienation, is a rule of equity administration, logically resulting from the application of two familiar principles of equity jurisprudence, namely:

1. As between the grantee and the mortgagee, the residue remaining in the hands of the mortgagor shall be first applied to the payment of the mortgage debt.

2. As between the grantee and mortgagee, the latter being a creditor with two funds, is required to proceed primarily against the fund upon which the grantee has no claim.

Supported as the doctrine is, both by reason and authority, we accept it as the law.

The equities of the appellant as against James McClure, mortgagee of lots fifteen and sixteen, will be first considered, and in the absence of any objection by counsel to the pleadings, the questions made will be treated as regularly before us.

It will be observed, that at the date of the mortgage to James McClure, the mortgage of the complainant stood released of record by Fassett, the mortgagee and assignor of the mortgage. James McClure had no constructive notice of the existence of the mortgage, nor does he appear to have had actual notice that the release by Fassett was fraudulent. The evidence shows him to be a subsequent incumbrancer in good faith without notice, and for a valuable consideration.

As between the appellant Fassett and James McClure, therefore, we need not go into any question of priority. Fassett having fraudulently released the first mortgage, and McClure having taken his lien without notice of the fraud, upon restoration of the mortgage, Fassett is in no position to urge that the lots so held by McClure shall be primarily subjected to the payment of the mortgage, of which he had no notice, by reason of Fassett's fraud, and of which, had he had notice, it is not to be presumed he would have taken his lien.

To say otherwise, would be allowing Fassett to reap an advantage from his fraud.

Should it be admitted, that as between the complainant Mulock and James McClure, lots fifteen and sixteen stood charged with the mortgage debt, notwithstanding McClure was a *bona fide* incumbrancer, McClure would have an undoubted equity, in view of the fraud, to have lot thirteen, held by Fassett, decreed primarily liable for the mortgage debt.

As between Fassett and his daughter, Mrs. Phelps, there was no valuable consideration; the conveyance to her was a con-

sideration of natural love and affection. She therefore took the property charged with these equities against Fassett.

In this view, it cannot be said that the appellants were prejudiced by the dismissal of the bill as to the defendant, James McClure.

We come now to consider the second objection made to the decree.

By the dismissal of the bill as against McClure, lots thirteen and fourteen alone remained to respond to the mortgage debt. Both the complainant and Fassett had full knowledge of the release and its character, and their respective equities were to be determined as though it had never been made, neither allowing Fassett to reap any benefit nor the complainant to suffer prejudice therefrom. Fassett's claim of negligence on the part of complainant in not sooner taking steps to set aside the fraudulent release, is unsupported by any equitable consideration. The fraud was his own, and his claim of protection on the ground that there has been want of diligence in setting aside and annulling his fraudulent act, is, at best, but effrontery.

The dates of Fassett's mortgages on lot thirteen were April 25, 1873, and April 24, 1874. The date of Mulock's mortgage on lot fourteen was December 22, 1875. The date of the mortgagor's conveyance of lot thirteen to Mrs. Phelps was October 31, 1876. The date of the mortgagor's conveyance to Mulock of lot fourteen was February 24, 1877. In each case the mortgage debt appears to have been the consideration, although Fassett, intending a gift to his daughter, Mrs. Phelps, caused the conveyance to be made direct to her, he paying the consideration by surrender of his two mortgages.

The rule that incumbered lands are to be charged in the inverse order of alienation of the several parcels, applies equally where the mortgagor has given thereon mortgages at different dates. *Schrever* v. *Teller*, 9 Paige, 173.

Whether considered as subsequent incumbrancers or as subsequent purchasers, Fassett was prior in point of time. When he purchased lot thirteen, he took it subject to the mortgage, which he had assigned to Mulock, and which is sought to be foreclosed, but under the rule which we have described he had an equity, which attached to lot fourteen, and made it, as between him and the mortgagor, primarily liable for the mortgage debt.

When Mulock in turn became the purchaser of lot fourteen, he had constructive notice of this equity, and took it subject thereto. That he stands in the relation of mortgagee and owner of the first mortgage, as well as purchaser, can make no difference in the application of the rule. A mortgagee is at liberty to deal with the mortgaged property, and purchase any portion of it, but if he do so, there is no reason for exempting him from the equities which attach in the case of any other purchaser.

As a mortgagee, having a first mortgage, his rights are preserved intact, and are to be enforced against all the property. As a purchaser, he has taken property subject to an equity with full notice, and has voluntarily assumed the risks of such a purchaser; if he loses, it is his purchase money, and not his mortgage debt.

The rule that when the equitable and legal estates unite in the same person, the equitable is merged in the legal estate, is not inflexible. Courts of equity are accustomed to treat the estates as merged or separate, as substantial justice may require. *Skeil* v. *Spraker*, 8 Paige, 185.

Whether the effect of the conveyance of lot fourteen by Mc-Clure to Mulock was to merge the mortgage as to that lot, need not be determined, as, in either view, Fassett's equities to have the mortgage debt abated as a lien on lot thirteen to the extent of the value of lot fourteen, remains unaffected.

Nor does the fact that Mrs. Phelps sustains the character of donee, preclude her from asserting this equity. Fassett paid a valuable consideration to the mortgagor, and the case stands the same as if McClure had conveyed to Fassett, and he in turn to Mrs. Phelps. Not having paid any valuable consideration, she must respond, as we have seen, to the equities against her donor; but her donor being a purchaser for a valuable consideration, she is entitled to assert his equities as her own. The objection that the appellants could avail themselves of their equities only by cross-bill, is not well taken. The fact that Mulock was a subsequent purchaser to Fassett of a portion of the incumbered property, was matter of defense that went in bar to part of the relief prayed against the appellants. As the proceeding was under the old chancery practice, it should perhaps have been set up by way of plea; but as no objection was made to the answer in the Court below, it will not be noticed here. Mulock having appropriated

lot fourteen by his purchase, should have been decreed to account for the value. In taking the account the master should have been directed to ascertain the then value of the lot, and as between the complainant and the defendants, Fassett and Mrs. Phelps, to allow it in abatement of the mortgage debt. To satisfy any unpaid balance, foreclosure and sale of lot thirteen should have been decreed.

We say, the then value, and not the value at the date of the purchase, for the reason that the sum for which lot fourteen would have sold at public vendue under the foreclosure proceedings, would constitute the credit to which appellant would have been entitled had there been no purchase by the appellee. Of course, any appreciation of value arising from improvements made by the appellee after the date of his purchase, is to be excluded from the account. To this extent the decree of the Court below is sustained and the case remanded, with directions for an account and decree in accordance with the views herein expressed.

*Wells, Smith & Macon,* for appellants.

*W. M. Lock, and Richmond & Stanton,* for appellee.