## HUCKABEE vs. BILLINGSLY.

1. Where a trustee in a deed, executed for the benefit of creditors, quit-claims to the grantor all his right, title and interest in the trust estate, the latter is thereby re-invested with the legal title, and a subsequent sale of it by the trustee, under the deed, conveys no such title to the purchaser as will sustain an action of trespass to try titles.

Error to the Circuit Court of Perry. Tried before the Hon. George Goldthwaite.

This was an action of trespass to try titles to certain lots in the town of Marion, and was instituted by the defendant against the plaintiff in error. The plaintiff on the trial read in evidence a deed of trust executed by John Huntington to William Howell, on the 17th September 1840, to which deed Jas. Harrell was also a party, conveying to said William Howell a number of slaves and the lots in controversy to secure the payment in the first instance of an indebtedness by Huntington to said Harrel, and in the second place of several notes

due to the Branch Bank at Mobile, on which the plaintiff, Thomas Billingsly and one Walter A. Parish were endorsers or securities. He also read a deed from Howell, the trustee, to him, for said lots, dated the 22d November 1844, and proved, in connection therewith, that said Huntington made default in paying the notes due to the bank, and that the trustee afterwards, at the request of said plaintiff and Parish, advertised and sold said lots in accordance with the provisions of the deed of trust, at which sale the plaintiff became the purchaser. The defendant offered to read in evidence a quit-claim deed executed to said Huntington by the said trustee and James Harrell on the 12th of March 1841, for the said lots, in consideration of the satisfaction by said Huntington of the debt of said Harrell provided for in the trust deed; also a deed for the lots from Huntington to one William Foster, made on the same day with the above. It appears from the record, that the purchase by Foster was founded on valuable consideration, but was made by an agent with notice of the deed of trust. The defendant held possession under Foster's title.— The court was requested by defendant to give to the jury six different charges, the third of which was, that by the deed from the trustee and Harrell to Huntington, the trustee parted with the legal title to the premises, and had no authority afterwards to sell under the deed of trust, and that such sale was void. This charge was refused by the court, whereupon the defendant excepted, and now assigns it as error.

GARROTT, for plaintiff in error:

1. By the execution of the deed in trust, to which Howell was a party, the legal title vested in him (Howell, the trustee,) and he could alien or in any manner alter the same. 2 Fonb. Eq. 166, note, (Lib. edit. 458, note); 2 Kinne's Comp. 709; Holman's Dig. T. R. 573. Difference between trusts where title *is conveyed*, and powers merely where power only is given *to convey*—similar to the distinction between a levy by a sheriff upon property under execution, and cases of sales of slaves to pay jail fees or of property to pay taxes. In the first, sheriff's sale, though irregular, will pass title to the purchaser. In the last, title will only pass where all the requisites of the law are complied with.

2. When the trustee, therefore, conveyed the property back to Huntington by the quit-claim deed, the trust as to him was extinguished, and he was estopped from selling and conveying a second time, (2 Story's Eq. 508, § 1264); consequently, his deed to Billingsly is void.

3. When the alienation did take place by the deed from Howell and Harrell to Huntington, (who was at the time of the execution of the deed in the possession of the property,) it being so intended, will amount to an absolute deed in fee simple. Coffin v. Russell, 8 Pick. 143.

4. Though the requisitions of the trust deed may not have been complied with, the irregularities in the sale cannot be inquired into in the case at bar, it being a suit at law. Brown v. Lipscomb, 9 Port. 472; Gray v. Colgin, 11 Ala. Rep. 514, and cases there cited; Tate v. Liggatt, 2 Leigh, 84.

5. Trusts are of exclusive equity jurisdiction, and as the naked legal title passed out of the trustee by his deed to Huntington for a valuable consideration, a court of law has no jurisdiction, being wholly inadequate to do justice between the parties. Justice can only be done in a court of chancery. 1 Lom. Dig. 243. Billingsly should have filed his bill, and then the rights of all parties would have been protected. 2 Story's Eq. § 960-1-2; Jackson v. Van Dalsfen, 5 Johns. Rep. 43; Jackson v. Walsh, 14 ib. 407, 412, 445; Brock v. Headen, 13 Ala. Rep. 370, 377; 12 Wend. 602; 8 ib. 426; Kennedy's Heirs & Ex'rs v. Kennedy's Heirs, 2 Ala. Rep. 572.

A. B. MOORE, for defendant:

2. This trust deed is in the nature of a mortgage, with the power of sale. The maker of the deed could therefore do no act to disseize the *cestui que trust.* See 2 Kinne, 207; Cro. Ja. 660; Cro. Cor. 304; Skin. 424.

2. It is a general rule that the trustee can do no act to prejudice the *cestui que trust.* See Hill on Trusts, 317; 1 Cruise's Dig. 351, 352; 10 Bacon, 216 (late edition.) To the above rule there is but one exception, i. e. if a mere trustee be in actual possession of the estate, and convey it for valuable consideration to a purchaser, without notice of the trust, the title of the purchaser will prevail. See Hill on Trustees, 317; Cruise's Dig. 351, 352; 10 Bacon (late edit.) 216.

3. In this case the trustee was never in actual possession, and Huntington and Foster both had actual notice as well as constructive notice of the deed of trust, at the time of Howell's relinquishment, and Huntington's sale to Foster.

4. To say that the deed of relinquishment, which the trustee clearly had no right to make, conveys a title that will defeat the plaintiff below, and that a deed which he made in strict conformity with the provisions of the trust deed conveyed no title to the purchaser, involves a gross absurdity.

5. Billingsly had a continual claim as provided in the deed, which he asserted all the time, in the only manner he could. See Bac. Abr. (old edit.) 126.

COLLIER, C. J.—A trustee, it is said, is a person holding the legal title to property, under an express or implied agreement to apply it, and the income arising from it, to the use and for the benefit of another person, who is called a *cestui que trust.*—Story on Con., 2d ed., § 296. The powers pertaining to a trustee over the trust property depend upon the nature of the trust and the terms of the instrument by which it was created; if these do not inhibit, he may reduce the trust estate into possession, and may sue or defend a suit at law in respect to it.—Chambers et al. v. Mauldin et al. 4 Ala. Rep. 477; Marriott & Hardesty et al. v. Givens, 8 ib. 694; Nicoll v. Mumford, 4 Johns. Ch. Rep. 529; Brooks v. Marberry, 11 Wheat. Rep. 97; Gray v. Hill, 10 Serg. & R. 436; Halsey v. Whitney, 4 Mason's Rep. 206; Acton v. Woodgate, 2 Mylne & K. Rep. 492; Garrard v. Lord Lauderdale, 3 Sim. Rep. 11; Small v. Marwood, 9 B. & Cresw. Rep. 300; Galt v. Dibrell, 10 Yerg. Rep. 146.

Although no one is compellable to undertake a trust, yet if the party named as a trustee intend to decline its administration, he ought to execute a *disclaimer*, or at least never interfere in the matter. Lewin on Trusts, &c. 225. It is said to be a universal rule, that a person who has once undertaken the office of trustee, either by actual acceptance or by construction of law, cannot discharge himself from liability by subsequent renunciation. The only mode by which he can obtain a release is either under the sanction of a court of equity or by virtue of a special power in the instrument creating the

trust, or with the universal consent of the parties interested in the estate.   Ib. 260.

Wherever a trust is created, a legal estate sufficient for the execution of the trust shall, if possible, be implied: consequently, a trust to sell, even on a contingency, confers a fee simple at law, as indispensable to the execution of the trust.— Lewin on Trusts, &c. 234.

A trust estate, whether real or personal, may, like a beneficial estate, be conveyed, assigned, or incumbered by the trustee at law.   As the dry legal estate in the hands of the trustee is affected by the operation of law, and may be disposed of by the act of the trustee, precisely in the same manner as if it were vested in him beneficially, so it confers upon him all the legal privileges and subjects him to all the legal burdens that are incident to the usufructuary possession.   Thus, he may sue at law respecting the trust estate; the *cestui que trust*, though the absolute owner, in equity, is regarded in a court of law in the light of a stranger.   Lewin on Trusts, &c., 244 to 248.

The *cestui que trust* may proceed against his trustee and oblige him to the execution of any particular act of duty: if, therefore, the legal estate in the hands of a trustee be assailed by a stranger, the *cestui que trust* may compel the trustee to assert his legal right.   So if the *cestui que trust* have reason to believe, and can show to the satisfaction of the court, that the trustee is about to do an act that is not within the scope of the trust, he may obtain an injunction to restrain him from an unauthorised exercise of power. Lewin on Trusts, &c. 603 to 609.

Where the trustee commits a breach of trust, the *cestui que trust* may follow the estate into the hands of a stranger to whom he has conveyed it,—the rule being that the equitable right of the *cestui que trust* may be successfully asserted against any person, who is either a volunteer with or without notice, or a purchaser for a valuable consideration with notice.   So he has a remedy against the trustee personally to recover compensation for the injurious consequences of his unauthorised act.   Lewin on Trusts, &c., 610.

The deed of trust under which the plaintiff attempts to deduce a title, is a conveyance of the premises in question, together with some personal estate, by Huntington to Howell,

to secure the payment of certain debts due by the grantor to Harrell, and to indemnify the plaintiff and Parish against the payment of certain notes which they had signed with the grantor as his sureties. It is professedly a deed between the grantor, the trustee, and Harrell—authorises a sale after default, upon the request of either of the beneficiaries, and gives to Harrell a priority in the payment of his demands. Harrell and the trustee united in the execution of a quit-claim deed to Huntington of the *premises*, in which it is recited that they had received *satisfaction to the extent of their value.* Subsequently Huntington and wife sold and conveyed the premises for a valuable consideration to Foster, whose tenants and those claiming through him have held the possession under the assertion of a right adverse to the plaintiff or the trustee.

Although Harrell was the only beneficiary who was made a party to the deed of trust, and its primary object was to secure him, yet we have seen that there were others who had interests provided for. Harrell having joined in the *quit-claim* to Huntington, cannot charge the trustee for a breach of duty; but the plaintiff and Parish may complain, and if prejudiced by that act, are entitled to be indemnified, in the mode we have indicated would be proper, where the trustee transcends his authority. Lewin on Trusts, &c., 464. The deed, however, was valid as between Harrell, the trustee and Huntington, divested the legal estate of the trustee, and left him no interest in the premises to which he had quitted claim. Having voluntarily parted with the estate confered by the deed of trust, he could not execute the duty it enjoined, and which he had undertaken to perform; for it was essential to its performance that he should have the legal estate. This conclusion is fully supported by the work we have cited, which is little more than a compilation of the adjudged cases. Pistole v. Street, adm'rx, 5 Port. Rep. 64.

The quit-claim re-invested Huntington with the legal estate, and left nothing in the trustee—not even the naked power to convey a complete title in the grantor's name: this was inseparable from the estate with which the trustee parted. Conceding, however, that the trustee could upon the requisition of the plaintiff and Parish have sold an equitable interest, the plaintiff could not recover in the present action, because it is

indispensable to his right to recover at law that he should show a legal title in himself. This he could not do, for the reason, as we have seen, that the trustee had no such title to convey.

It is immaterial to the present case whether the agent of Foster had notice of the trust at the time he purchased; however this may be, the effect of the quit claim to divest the legal estate is still the same. The question of notice might perhaps be important in considering whether the equitable rights of the *cestui que trusts* were affected, but beyond this, we cannot perceive that it is entitled to consideration.

We are not inclined to go beyond the case before us and enquire what are the respective rights of the plaintiff and defendant in equity, upon the hypothesis that the agent of Foster purchased with notice. But we are disposed to think that the defendant is entitled to stand in the situation that Harrell occupied, and if the sale should be set aside he may claim a prior lien to the extent of the consideration that Harrell and the trustee received for their quit claim to Huntington: provided it does not exceed the amount of the sum that was due to Harrell. As to the right of the defendant to be compensated for improvements made upon the premises, this will not present a question of great difficulty when the facts are developed.

This view leads us to the conclusion, that by executing the quit claim deed to Huntington the trustee parted with his legal estate, and consequent authority to make the subsequent sale under the deed of trust at which the plaintiff purchased; consequently the third charge prayed should have been given. We will not stop to consider the other questions raised, as the conclusion expressed is decisive of the present case. We have but to add that the judgment is reversed, and the cause remanded.