## STEPHENS v. CLAY.

1. TRUST DEEDS AND MORTGAGES.—Trust deeds given as security and mortgages containing a power of sale vest the legal title in the trustee ; the equitable title or equity of redemption remains in the "trustor" or mortgagor.

2. EFFECT OF CONVEYANCE BY TRUSTEE.—The trustee, so long as he retains the legal title, is also vested with authority, upon default in payment of the mortgage debt and upon proper advertisement and sale, to convey the equitable title of the trustor or mortgagor.

3. IRREGULAR CONVEYANCE BY TRUSTEE—EQUITABLE RELIEF.—The trustee may divest himself of the legal title without compliance with the conditions of the trust ; but without such compliance a sale and deed do not pass the trustor's equitable estate. To execute the trust under such circumstances equity grants appropriate relief either by a regular judicial foreclosure and sale, or by a decree requiring the grantee to execute the power in accordance with the terms of the trust, or by appointing a new trustee and devolving upon him the execution of such power.

4. SECOND CONVEYANCE BY TRUSTEE A NULLITY.—A deed made by the original trustee after having conveyed the legal title, though such second deed be upon a re-advertisement and re-sale in accord with the conditions of the trust, is of no force or effect whatever.

5. GRANT OF PREMISES SUBJECT TO MORTGAGE.—Where the owner conveys the entire estate subject to a mortgage, in the absence of specifications in the deed or of proofs *aliunde* to the contrary, the grantee takes simply the equity of redemption.

6. SALES BY MORTGAGOR—HOW MORTGAGE DEBT SATISFIED.—But where an estate subject to a mortgage is sold by the mortgagor in parcels at different times, the mortgage debt shall be satisfied, first, out of that portion of the estate retained by the mortgagor, and then out of the parcels aliened, in the inverse order of alienation. This rule may, however, be controlled by recitals in the deed showing a different intent.

7. HOW CESTUI QUE TRUST OR MORTGAGEE AFFECTED.—The rights of the *cestui que trust* or mortgagee are not disturbed by these transactions, save that under some circumstances equity may require him first to exhaust the parcel retained or the parcel conveyed, as the case may be, in satisfaction of the debt secured.

8. TRUSTEES' SALES—CAVEAT EMPTOR.—The rule of *caveat emptor* applies to trustees' sales, and the purchaser is, in proceedings by a party injured, conclusively charged with notice of irregularities by the trustee in executing the power of sale.

*Appeal from Superior Court of Denver.*

| 17 | 489 |
| 18 | 448 |
| 17 | 489 |
| 19 | 96 |
| 17 | 489 |
| 20 | 502 |
| 17 | 489 |
| 21 | 479 |
| 22 | 391 |
| 17 | 552 |
| 7a | 411 |
| 17 | 489 |
| 25 | 268 |
| 25 | 357 |
| 1Ca | 404 |
| 12a | 33 |
| 12a | 547 |
| 17 | 489 |
| f26 | 267 |
| 14a | 371 |
| 17 | 489 |
| 27 | 42 |
| 17 | 489 |
| 28 | 387 |
| 17 | 489 |
| 17a | 320 |

ON January 30, 1883, Daniel R. Clay, being the owner and possessed of certain lots in the city of Denver, executed and delivered to James R. Ives, as trustee, a trust deed upon said premises to secure to plaintiff Stephens the payment of his promissory note for $1,000 borrowed of him, with interest at 10 per cent. In case of default, the trustee was authorized, in the usual form, to sell the premises and the equity of redemption of Daniel R. Clay, his heirs or assigns, at public auction in cash, ninety days public notice having been previously given in newspaper, and make deed to purchaser. This deed was duly recorded.

October 8, 1883, Daniel R. Clay conveyed to defendant, Mary Belle Clay, an undivided one half interest in said lots. " *The above subject to a total incumbrance of $1,000 and accumulated interest.*" Recorded October 30, 1883.

After default in payment of said note, on May 12, 1885, the trustee, Ives, sold the premises to plaintiff Stephens, having previously given but eighty-nine, instead of ninety days notice. Proceedings in all other respects regular. This deed was recorded May 13, 1885. On May 12, 1885, D. R. Clay quit-claimed the whole of his interest in the premises to plaintiff. Recorded May 13, 1885.

On May 22, 1886, Ives, the trustee, discovering his error in the notice of previous sale, re-sold the premises, giving ninety-five days notice and complying strictly with all other requirements of the trust deed; at this sale plaintiff Stephens was again the purchaser. Ives executed and delivered a second trustee's deed to plaintiff, recorded September 6, 1886. Thereupon plaintiff took and still retains possession of said premises.

This action was brought July 22, 1887, by Stephens against Mary Bell Clay under the statute (Civil Code, 1887, sec. 255) for the purpose of quieting his title. Defendant answered setting forth her alleged title to one half of the premises; and by cross-complaint demanding affirmative relief. Judgment was rendered in her favor.

Mr. R. H. GILMORE, for appellant.

Mr. J. H. REDDIN, for appellee.

MR. JUSTICE HELM delivered the opinion of the court.

In response to the preliminary objection urged by counsel for appellee, we suggest: That while a general assignment of error challenging the charge as a whole or the rulings *en masse* in admitting or rejecting testimony would be defective, yet where, as in the present case, the judgment or decree is questioned on the ground that it is not supported by the evidence or that it is contrary to law, such an assignment may be sufficient. The assignments before us might have been more specific and elaborate ; but they are not so imperfect as to justify our refusal to consider the merits of the controversy.

The decision of the case at bar depends upon the effect of the first attempted sale and deed by the trustee. That there was a fatal error on his part in advertising the sale is not questioned ; but if the deed executed in pursuance thereof conveyed the trustee's legal title, his subsequent attempted sale and deed were ineffectual to destroy appellee's right of redemption. If, on the contrary, the trustee's first deed was of no force or effect whatever for any purpose, the legal title remained in him, and his second sale and deed being regular, divested appellee's equity of redemption.

Trust deeds given as security, and mortgages containing a power of sale, vest the legal title in the trustee. The equity of redemption or equitable title remains in the mortgagor or "trustor," *i. e.*, the owner. The legal title of the trustee is supplemented by a power which authorizes him upon default in payment of the mortgage debt, to advertise and sell the property ; the right to exercise this power, as we shall presently see, being dependent upon his possession of such legal-title. The object of the power of sale is not to enable him to convey the legal title vested in himself, but to clothe

him with authority to sell and convey the equitable title remaining in the trustor. He may divest himself of the legal title without compliance with the conditions of the trust. But a sale and deed except in strict compliance with the power specified, is of no effect whatever so far as the trustor's equitable estate is concerned. If the trustee, in disobedience of the trust conditions, by deed transfer the legal title, his grantee takes only the trustee's interest. He steps into the trustee's shoes, so to speak, and holds subject to all reserved rights of the trustor. Neither courts of law nor courts of equity regard the trustee's deed as absolutely void. Both recognize the fact that it conveys the legal title. The difference is that the grantee's title or ownership cannot be challenged at law, while equity treats him as a successor to the trust and protects the trustor's estate. Equity does not vacate the trustee's deed and regard the title as remaining in him. Appropriate equitable relief is usually obtained in one of the following modes: The cumulative remedy of a regular judicial foreclosure and sale is allowed; or a decree is entered requiring the grantee to execute the power in accordance with the terms of the trust deed as the trustee should have done; or the execution of the power is by decree devolved upon a new trustee appointed for the purpose. Upon delivery of his deed the original trustee ceases both at law and in equity to have any further interest in the property. The power of sale is extinguished so far as he is concerned, leaving him in the same position as a total stranger. And an effort on his part to exercise the power originally vested in him, by an attempted resale or a second deed, is of no more force or effect than if the same proceedings were taken by one who had never been connected with the title. *Koester v. Burke*, 81 Ills. 433; *Wells v. Caywood*, 3 Colo. 487; *Doe v. Robinson*, 24 Miss. 688; *Huckabee v. Billingsly*, 16 Ala. 414; *Taylor v. King*, 6 Munford (Va.) 358; *Cranston v. Crane*, 97 Mass. 459; *Fulton v. Johnson*, 23 W. Va. 95.

The foregoing views are also substantially recognized in the following works: Jones on Mortgages (4th ed.), chap.

40 ; 2 Perry on Trusts (3d ed.), sec. 602 *b et seq.;* Judge
Dillon in Amer. Law Register, vol. 2 (New Series), 650 *et
seq.,* 724 *et seq.*

Certain expressions used by the law writers named, touch-
ing the effect of the trustee's deed in " passing title " where
the terms of the power have not been pursued, seem to be
inconsistent with each other.   But these apparent inconsis-
tencies vanish as soon as the doubtful expressions are prop-
erly understood.   Upon critical examination it appears that
when the learned writers declare that the trustee's deed
under such circumstances *passes no title* (unless merely stat-
ing the conclusion reached in certain exceptional cases herein-
after noticed), they refer to the equitable estate of the
trustor ; while of course the declaration frequently employed
that *at law the title passes* to the grantee always relates to
the title of the trustee ; though it also contemplates the fact
that as a rule in legal actions equitable estates are not
considered.

We do not say that the views above stated are universally
adopted.   There are able decisions which hold that the deed
of the trustee made in pursuance of an irregular sale is itself
void and does not divest his legal title.   These decisions
either affirmatively declare or logically sanction the doctrine
that the trustee under such circumstances retains the author-
ity originally embodied in the power, and upon discovery
that the sale is defective may proceed to re-sell the property ;
likewise as both a legal and a logical sequence, that if the
new proceeding be in full compliance with the conditions of
the power, the trustee's second deed operates to convey the
equitable title of the trustor.   *Ohnsburg v. Turner,* 13 Mo.
Ap. 533 ; *Enochs v. Miller,* 60 Miss. 19 ; *Bottineau v. Ætna
Life Ins. Co.,* 31 Minn. 125 ; *Ohnsburg v. Turner,* 87 Mo.
(S. C.) 127 ; New York and Michigan announce a similar
rule; but in those states the invalidity of a trustee's deed
made in pursuance of a defective sale, is declared by statute.

The authorities last above mentioned would hardly be fol-
lowed were the subject one of first impression in this state.

And we are certainly not prepared to overrule *Wells v. Caywood, supra.* That case so far as it goes is in accord with well reasoned opinions, and the view taken, as already indicated, harmonizes with the one more widely prevailing. The cases of *Bigler v. Waller,* 14 Wall. 297, and *Schillebar v. Robinson,* 97 U. S. 68, so confidently relied on by counsel for appellant, when carefully examined do not sustain his contention. The emphatic language employed in those decisions by which a *sale* without the requisite notice is declared "a mere nullity, disturbing no right and conferring none," refers to the rights of the original trustor or mortgagor. Both suits were in equity, and the learned judges were not considering the effect of the trustee's deed upon his legal title.

This court has announced a similar doctrine touching deeds executed by trustees holding title to town sites under government patent, in disregard of the conditions of the trust. *Smith v. Pipe,* 3 Colo. 187; *Filmore v. Reithman,* 6 Colo. 120; *Murray v. Hobson,* 10 Colo. 66. The legal *status* of town site and mortgage trustees is not in all respects the same. But sufficient analogy exists to justify a reference to the case mentioned, by way of illustration though not strictly as precedents.

It follows from the foregoing conclusions that the deed made by Ives on the 13th of May, 1885, though ineffectual to extinguish the rights of the trustor, yet conveyed the legal title to the grantee named. It likewise follows therefrom that the second sale by Ives and the deed executed in pursuance thereof were of no force or effect whatever. The legal title by virtue of the first trustee's deed was vested in Stephens, subject to the conditions of the original power. Undoubtedly, the quitclaim deed of D. R. Clay, the original trustor, conveyed to Stephens his remaining interest in the property. But it does not appear that Mary Belle Clay directed or consented to the second attempted sale; and neither the quitclaim deed of D. R. Clay nor anything else of which we are advised, divested the right of redemption as to one half of the property held by her under her deed of

October 8, 1883. At the commencement of this suit, therefore, no effort having been made by Stephens in the meantime to execute the power specified in the original trust deed, or to cut off the estate of Mary Belle Clay through a judicial foreclosure, she was still entitled to exercise the right of redemption; i. e., to procure a reconveyance from Stephens of the legal title to one half of the premises upon tender of the amount of the original loan with interest, or of such proportion thereof, if any, as her estate is liable for.

This brings us to the second important question submitted. Appellant's counsel contends that if the second attempted sale by Ives, the trustee, did not extinguish the equity of redemption of appellee, her moiety of the property is primarily liable for the payment of the entire mortgage debt; appellant's half being holden only for the balance, if any, remaining unpaid after exhausting appellee's interest.

Where a conveyance of the entire estate is made subject to a mortgage, in the absence of specifications therein or of proofs *aliunde* to the contrary, the grantee takes simply the equity of redemption. *Winans v. Wilkie*, 41 Mich. 264; *Fiske v. Tolman*, 124 Mass. 254; *Woodbury v. Swan*, 58 N. H. 382; 1 Jones on Mortgages, sec. 736.

But where the mortgagor instead of conveying the whole conveys by warranty deed a *part* of the mortgaged premises, an "inequality of equities," as it is termed, between himself and his grantee is introduced. The general rule applicable to such cases as stated by this court is that: "Where an estate is subject to a mortgage and is sold by the mortgagor in parcels at different times, the mortgage shall be satisfied, first, out of that portion of the estate still in the hands of the mortgagor, and then out of the parcels aliened in the inverse order of alienation." *Fassett v. Mulock*, 5 Colo. 466. This rule, however, may be modified by recitals of the deed. Pomeroy's Eq. Juris., sec. 1225. And it is for the courts in each particular case where reference to the mortgage is made in that instrument, to determine the intent of the parties as expressed by the language they use.

The deed from D. R. Clay to appellee does not, in our judgment, indicate a purpose to subject the estate of appellee primarily to the payment of the entire debt. This deed conveys to appellee an undivided half interest in each of two different parcels of lots, each parcel being encumbered. The language in the granting clause of the deed, " the above subject to a total encumbrance of $1,000 and accumulated interest," simply declares that the particular parcel of lots referred to was burdened with this encumbrance. Had the intention been to say that the undivided half interest in those lots conveyed to appellee should be primarily liable for the payment of the whole encumbrance, different phraseology would have been employed.

On the other hand, we cannot concede the correctness of the view taken by the trial court, that the interest retained by D. R. Clay and now vested in appellant is primarily bound for the entire debt. The rule stated in *Fassett v. Mulock*, *supra*, and in similar decisions, contemplates cases where a warranty deed is executed conveying the fee to a parcel of the mortgaged premises without mention of the mortgage. It is apparent that the instrument now under consideration is not such a deed. The encumbrance is expressly referred to in both the granting and *habendum* clauses. By the former clause the conveyance is affirmatively made subject to the mortgage ; by the latter clause the mortgage is specifically excepted from the covenant of warranty. Considering the instrument as a whole, we think the intent of the parties was simply to leave undisturbed as between themselves the lien of the mortgage upon the entire premises, including the moiety conveyed, and thus to preserve an equality of equities in this respect. Hence, appellee took a title burdened with the mortgage, and if she will assert her right to redeem she must pay appellant one half of the original mortgage debt, with interest. *Briscoe v. Power*, 47 Ills. 47 ; *Hoy v. Bramhall*, 19 N. J. Eq. 74; *Slater v. Breece*, 36 Mich. 77 ; *Drury v. Tremont Imp. Co.*, 13 Allen, 168 ; 1 Jones on

Mortgages, sec. 736 ; 2 Washburn on Real Prop. (4th ed.);
p. 208, sec. 6 *a.*

It is hardly necessary to add in conclusion that no right of
the *cestui que trust* or mortgagee is disturbed by the foregoing
transactions; save that under some circumstances equity may
require him first to exhaust the parcel retained or the parcel
conveyed, as the case may be, in satisfaction of his mortgage
debt.    Nor is it necessary to specifically declare what is as-
sumed in the above discussion, that the doctrine of *caveat
emptor* applies to trustee's sales ; and that the purchaser,
whether he be the mortgagee or a stranger, is, in proceedings
by a party injured, conclusively charged with notice of ir-
regularities by the trustee in excuting the power of sale.

The decree of the court below is reversed, and the cause
remanded with directions that a new decree be entered in
accordance with the views herein expressed.

*Reversed.*