## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

### SMITH V. WOODWARD AND OTHERS.

### AND

### STORY, TRUSTEE, V. WOODWARD AND OTHERS.

January 24, 1918.

1. MORTGAGES AND DEEDS OF TRUST—*Powers of Trustee—Sale of More Property than Necessary to Satisfy the Debt.*—The owner of three parcels of real estate, consisting of a tract of land, a dwelling house and a factory lot, conveyed it to a trustee to secure the payment of a bond. Subsequently, two other deeds of trust were executed by the owner, on the same property, to the same trustee, to secure creditors. Upon default upon the first bond and upon demand for sale the owner requested the trustee to advertise only the dwelling and the factory lot, and not the farm. The trustee refused and said he would advertise the whole. The trustee did not advertise at that time, but did subsequently advertise the property to be sold under the first deed of trust. No request for a sale was made under the other deeds of trust, nor did it appear that the debtor was in any default in relation thereto. In making the sale the trustee claimed to have acted upon the request of the grantor, but it appeared that whatever authority, if any, had been conferred by the request of the grantor, was withdrawn before the sale, and the trustee was requested not to sell any more land than was necessary to pay the debt. The farm was sold first and brought enough to satisfy the debt secured and the costs. After the sale of the farm the trustee sold the dwelling and the factory lot. From the advertisement of the sale it appeared that the property was to be sold under the first deed of trust and that the sale under that deed was to be made at the request of both the debtor and the creditor.

*Held:* That, the decree of the circuit court setting aside the sale of the dwelling house and adjusting the rights of the parties must be affirmed.

2.  MORTGAGES AND DEEDS OF TRUST—*Sale—How Much of the Property Should be Sold.*—It is the duty of the trustee not to sell more of the trust subject than the purposes of the trust require, even though the deed direct him, in case of default, to sell the trust subject without saying or so much thereof as may be necessary to satisfy the purposes of the trust. That is always implied, unless a contrary intention plainly appears.

3.  MORTGAGES AND DEEDS OF TRUST—*Powers of Trustee—Sale of More Property than Necessary to Satisfy the Debt—Estoppel of Owner.*—In the instant case it was contended that the debtor was estopped by his conduct from objecting to the sale, and, in support of that contention, reliance was placed upon the fact that the sale was advertised as at the request of the debtor, that such request had in fact been made, and that he had held the trustee out as his agent to sell, that he was present at the sale and made no announcement of his revocation of his authority, and raised no objection at the time to the fairness and legality of the sale. It appeared, however, that the consent given was for a sale under the first deed *for the purposes of that deed,* that the debtor was not actually present when the dwelling was sold, and, if the trustee had been constituted the agent of the debtor to sell his land, he was a special agent, with limited authority, and the purchaser dealt with him at his hazard. The debtor was on the ground and could easily have been consulted, and, if consulted, it would have been ascertained that no such agency as was claimed had ever been created, or, if created, it had been revoked.

4.  MORTGAGES AND DEEDS OF TRUST—*Powers of Trustees—Sale of More Property than Necessary to Satisfy the Debt—Consent of Debtor.*—In the instant case the consent of the debtor to the sale of the dwelling house after the farm had been sold for sufficient to satisfy the debt secured and the costs, could not be implied from his assent to an arrangement by which he was to have possession of the farm and the rents, issues and profits thereof, for the remainder of the year in which the sale was made.

5.  MORTGAGES AND DEEDS OF TRUST—*Several Deeds of Trust—Rights of Creditors Secured by Subsequent Deeds at Sale under First Deed.*—In the instant case, at the time of the sale under the first deed, there had been no default under the second and third deeds, and the creditors secured therein had no control over, or right to interfere with, the sale being made under the first deed.

6. MORTGAGES AND DEEDS OF TRUST—*Trustee's Sale—Caveat Emptor.*—The rule of *caveat emptor* applies with full force to sales made under deeds of trust to secure creditors. The deed is the chart by which the trustee is to be governed. He is a special agent with designated powers, and a purchaser at a sale made by him takes upon himself the risk not only of the fairness of the sale, but of the regularity thereof, and of his compliance with all the substantial requirements of the instrument under which he acts. Such purchaser is chargeable with notice of the extent and limitation of the trustee's powers. He is bound not only by *actual* notice, but by *constructive* notice as well, which is the same in effect as actual notice. If he has notice, actual or constructive, that the trustee is exceeding his authority in making the sale, or is not complying substantially with the terms of the instrument creating the power of sale, he does not occupy the position of a purchaser without notice.

7. MORTGAGES AND DEEDS OF TRUST—*Sale of Trust Property—Purchaser without Notice.*—In the instant case, the purchaser at the trustee's sale had constructive notice of the contents of the deed under which he purchased, and of the amount of the debt secured, and, being also the purchaser of the farm, he knew that the farm had brought ample to pay that debt; he knew, therefore, that the deed had served its purpose, and that it was improper for the trustee to undertake to make further sales under that deed, and that such sales would at least be irregular.

8. MORTGAGES AND DEEDS OF TRUST—*Sale of Trust Property—Purchaser without Notice.*—One who was present at the sale and bid $3,600 on the dwelling which was cried out to the purchaser at $3,650, and had notice of the same facts with which the purchaser was chargeable, as stated in the preceding headnote, and afterwards paid the purchaser $100 for his bargain, taking his deed directly from the trustee, stands on no higher footing than if the property had been cried out to him at the trustee's sale.

9. MORTGAGES AND DEEDS OF TRUST—*Sale—Rights of Purchaser at Irregular Sale.*—In Virginia, the legal title which is vested in the trustee of a deed of trust to secure the payment of a debt, may be conveyed by him without compliance with the conditions named in the deed, as the trustee has an estate coupled with an interest and not a mere naked power; consequently, an irregular sale by a trustee to a purchaser who has paid his money and obtained a deed from the trustee is valid in law. But in equity the rule is otherwise, and the title of a

purchaser at such a sale will not be upheld unless there has been at least a substantial compliance with the terms of the deed conferring the power of sale, and if a sale is made after the debt secured has been paid, it will be set aside.

10. MORTGAGES AND DEEDS OF TRUST—*Sale—Rights of Purchaser at Irregular Sale.*—The trustee had the power to make a deed to the purchaser in the instant case, in the sense that he was invested with the legal title and could convey that legal title to another, and the grantee would be the owner at law, but it is not true that the grantee would thereby acquire the beneficial ownership of the land as between him and the grantor in the trust deed.

11. MORTGAGES AND DEEDS OF TRUST—*Sale—Unauthorized Act of Trustee.*—A court of equity will not permit a grantor in trust to be deprived of his property by an unauthorized act of the trustee, and will set aside a sale and conveyance where the trustee has exceeded the authority conferred upon him, or sold the grantor's land after the purposes of the trust have been accomplished, and especially where the purchaser has notice, actual or constructive, of the facts.

12. MORTGAGES AND DEEDS OF TRUST—*Setting Aside Sale—Allowance for Improvements by Purchaser.*—Code of 1904, section 2760, allowing recovery for improvements restricts such recovery to one "holding the premises under a title believed by him * * * to be good." This section has no application to one who is not a *bona fide* purchaser, and a person with notice, actual or constructive, of infirmity in his title cannot recover for improvements.

13. MORTGAGES AND DEEDS OF TRUST—*Setting Aside Sale—Allowance for Improvements by Purchaser.*—Where suit is brought to set aside a trustee's sale under a deed of trust within about forty days after the date of the sale, and thirty days after the purchaser obtained his deed, the grantor is not chargeable with negligence in bringing his suit, and of standing by and seeing the purchaser put valuable improvements on the place without making known his objections.

14. MORTGAGES AND DEEDS OF TRUST—*Suit to Set Aside Sale—Proper Parties.*—While in the instant case a part of the debt secured by the first deed of trust was originally paid from the proceeds of the dwelling, yet before the decree complained of was entered, the terms of sale of the farm and factory had been complied with, and the court, with ample funds in hand, by the decree complained of, readjusted the rights of the parties so as to indemnify the other funds from the proceeds of the sale of the farm and thereby in effect to discharge the full amount of the debt secured by the first deed of trust from the

proceeds of the farm, and leave the residue of the proceeds of the farm and the whole of the proceeds of the dwelling and peanut factory to the creditors secured by the second and third deeds of trust. This was a proper method of procedure, and as the debt secured by the first deed of trust was wholly discharged from the proceeds of the farm, the creditor was neither a necessary nor proper party to the suit to set aside the sale of the dwelling.

15.  APPEAL AND ERROR—*Reversal—Substantial Justice.*—Where substantial justice has been reached and the rights of all parties in interest have been adequately safeguarded by the decree appealed from, the Supreme Court of Appeals will not be astute to find technical objections by which such decree may be reversed.

Appeal from a decree of the Circuit Court of Southampton county. Decree for complainants. Defendants appeal.

*Affirmed.*

The opinion states the case.

*Buford & Peterson, R. R. Hicks* and *E. Frank Story,* for the appellants.

*J. N. Sebrell, Jr.,* for the appellees.

BURKS, J., delivered the opinion of the court.

This was a suit to set aside a sale of real estate made by a trustee under a deed of trust to secure a creditor. The circuit court set the sale aside, and from its decree setting aside the sale and adjusting the rights of the parties consequent thereon separate appeals were taken by the purchaser and by the trustee.

Benjamin P. Woodward and wife, by deed bearing date June 1, 1912, conveyed to E. Frank Story, trustee, three parcels of real estate, consisting of a tract of land, a dwell-

ing house and a factory lot, in trust to secure to Mrs. Pattie M. Story the payment of a bond for $7,000, of even date with the deed. The deed provided that "in the event that default shall be made in the payment of the above described bond, or any part thereof, principal or interest, when the same shall be demanded, then the trustee on being thereto requested by the then legal holder of the said bond, shall sell the property hereby conveyed at public auction to the highest bidder for cash." The deed then proceeds to describe the terms of advertising and the application of the purchase money to the payment of the expenses of sale and the debt secured, and directs that the residue, if any, shall be paid to the grantors. The deed also requires the grantors to keep the dwelling insured for at least the sum of $4,000. The deed does not prescribe the order in which the different parcels shall be sold, if a sale should become necessary. Subsequently, two other deeds of trust were executed by the same grantors, on the same property, to the same trustee, to secure creditors. One bearing date January 27, 1915, secures to F. P. Pope a bond for $3,933.33, bearing even date with the deed, payable on demand, and the other bearing date February 5, 1915, secures to J. Davis Woodward a bond for $2,542.81, bearing even date with the deed, and payable on demand.

B. P. Woodward made default in the payment of principal and interest of the debt secured in the first deed, and the creditor secured was demanding its enforcement. In the latter part of December, 1914, or early in January, 1915, and before either of the last two deeds of trust had been executed, B. P. Woodward, the debtor, upon being informed by the trustee of the demand for a sale under the first deed, requested the trustee to advertise only the dwelling and the factory lot, and not the farm. The trustee did not assent to this, but said he would have to advertise the whole. The trustee did not at that time advertise the property for

46

sale, but he did subsequently, and after the date of the last deed of trust, advertise the property to be sold under the first deed of trust, and stated in the advertisement that the sale was to be made at the request of the beneficiary in that deed and of B. P. Woodward, the grantor therein. The sale was advertised to take place at 12 o'clock on March 20, 1915. The amount of Mrs. Story's debt was then about $6,700. At that time, it does not appear that any demand had been made for any part of the debts secured in either of the last two deeds of trust, recently theretofore executed, or that the debtor was in any default in relation thereto. On this subject, the trustee says: "No default in interest on the last two, if I remember. Wait a minute—I am not sure about that. I don't think there was any default in the interest of the last two, because they had been recently given for the purpose of closing up the indebtedness that was then past due by Mr. Woodward." Certainly no request for a sale under either of those deeds had been made by any one, and the trustee testifies that he did not advertise nor pretend to sell under either of them. So far as the deeds are concerned, the sale was made solely under the power conferred by the first deed of trust. It is true that the trustee also claims to have acted upon the request of the grantor, but we shall see later on that whatever authority, if any, was conferred by the request of the grantor in the preceding December or January was withdrawn before the sale, and the trustee was requested not to sell any more land than was necessary to pay the debt secured by the deed under which the sale was being made.

The creditors secured in all three of the deeds of trust were present or represented on the day of the sale. The debtor made earnest efforts that day to obviate the necessity for the sale, and negotiations were conducted several hours between him and the creditor secured in the first deed looking to a postponement of the sale, but they were inef-

fectual, and the sale which was to have taken place at twelve o'clock did not commence until sometime between two and three o'clock. There is conflict in the testimony as to what took place before the sale relating to what was to be sold and as to several other matters. The trustee was insisting upon a sale of all of the property conveyed, and seems to have been under the impression that the debtor assented to it, provided possession of the farm was not given until January 1st, following, and that the debtor be allowed to take the rents for that year. The debtor, however, insists that this arrangement applied only to the sale of the farm, and that he insisted that no more land should be sold than was sufficient to pay the debt secured in the first deed under which the sale was being made. In this matter, the debtor was represented by Mr. R. Howard, president of the Bank of Newsoms. He is very positive in his statements as to what transpired about the sale. He says he told the trustee that he was representing the debtor, and, after giving other conversations, he says, in speaking of a conversation with the trustee, "I then requested him not to sell any more than enough property to satisfy the deed of trust of Mrs. Pattie Story, as the other property was not advertised, and he told me under the terms of the deed of trust he would have to sell all." Referring again to the same subject, the witness says: "He then told me that he would have to sell the whole of it. There was no question. I asked him not to sell any more than would satisfy Mrs. Story's deed of trust—if he would satisfy Mrs. Story's deed of trust it would not be necessary to sell any more. He said under the terms of the deed of trust he would have to sell it all. I told him I thought after satisfying the deed of trust he could not sell any more, and he said he could do it, and would have to do it." The trustee does not deny this, but says, "so far as the specific request that I sell enough property only to satisfy the trust deed I do not recall. I do not be-

lieve Mr. Howard would make a statement that he did not believe to be true, but if such a request was made of me, in the language read, or otherwise, I do not recall it." The statements of Mr. Howard are fully sustained by the testimony of the debtor, Woodward, and are not contradicted by any witness, except so far as the testimony of the trustee may be regarded as a contradiction. There can be little doubt, upon this testimony, that the request was made, and it is conceded that it was not granted. It is also conceded that, at the request of the debtor, the farm was the first piece of property offered, and that it brought $8,800. The debtor testifies that he requested that the farm should be sold first because he was satisfied it would bring sufficient to pay the debt secured and the costs. Mrs. Story's debt was originally $7,000, and bore interest from June 1, 1912, so that, if no payments had been made thereon, it amounted, on the day of sale, to about $8,178, thus leaving upwards of $600 to cover expenses. As a matter of fact, however, the debt amounted to only about $6,700, so that there could be no question that the farm brought more than enough to pay the debt. The debtor states that he made no further remonstrance about the sale of additional property, and went into the store in front of which the property was being sold, and does not know in what order the other pieces of property were sold. After the sale of the farm, the trustee sold the dwelling and the factory lot, and J. Davis Woodward became the purchaser of each, and afterwards transferred his purchase of the dwelling to J. W. Smith, under circumstances hereinafter to be stated. It is the sale of this piece of property which is the chief subject of contention in this litigation.

After the debtor was notified by the trustee that Mrs. Story, the beneficiary in the first deed, was demanding a sale to pay her debt, he requested the trustee to advertise and sell the dwelling and factory, as he then desired, for

reason stated by him, to retain the farm. This was a request for a sale *under the deed,* and was made before the second and third deeds were executed. The record does not disclose any other request by the debtor of the trustee for the sale of his property. The advertisement of the property, though referred to in the deposition of B. P. Woodward as filed therewith, does not appear in the record, but from a copy thereof in the petition for appeal it appears to be an advertisement of a trustee's sale, that the property was to be sold under the deed of trust to secure Mrs. Story, bearing date June 1, 1912, and that the sale *under that deed* was to be made at the request of both the debtor and the creditor. There is nothing to show that the trustee was to go outside of his duty as trustee and sell property as the agent of the debtor. Indeed, it is stated in the brief of counsel for the trustee that "he does not claim that the action of the trustee is indefeasible because the appellee requested the sale, or because the property was advertised for sale as at appellee's request," but bases his contention on the consent of the debtor given on the day of sale. This contention, we think, has already been sufficiently disposed of.

It is earnestly contended by counsel for the appellants that B. P. Woodward, the debtor, is estopped by his conduct from objecting to the sale, and, in support of that contention, reliance is placed upon the fact that the sale was advertised as at the request of the debtor, that such request had in fact been made, that he held the trustee out as his agent to sell, that he was present at the sale and made no announcement of his revocation of his authority, and raised no objection at the time to the fairness and legality of the sale. These positions have probably already been sufficiently answered by what has been hereinbefore stated, but it may be added that it appears that the consent given was for a sale under the first deed *for the purposes of that deed,* that the debtor was not actually present when the dwelling was sold, but

was in the store house, and more particularly, if the trustee had been constituted the agent of the debtor to sell his land, he was a special agent, with limited authority, and the purchaser dealt with him at his hazard. Huffcut on Agency, section 104. Woodward was on the ground and could easily have been consulted, and, if consulted, it would have been ascertained that no such agency as was claimed had ever been created, or, if created, it had been revoked. The only "request" to sell ever made by the debtor, and the only "agency" created, was for the sale under the first deed of trust, and when sufficient property had been sold to satisfy this debt, the "request" was granted, and the "agency" terminated. At the time of the sale there had been no default under the second and third deeds, and the creditors secured therein had no control over, or right to interfere with, the sale being made under the first deed. The limit of authority of the trustee under the first deed was to make sale of the property conveyed for the payment of the debt therein secured, but he was insisting on the right to sell the whole of the property conveyed, although it was much more than sufficient to pay the debt secured by the first deed. The debtor was heavily involved, and it seemed manifest if the property was not then sold, the creditors secured in the second and third deeds would immediately demand sales under their deeds, and the trustee seemed to have thought that further advertisements and sales under those deeds would involve the debtor in useless expense, and cause unnecessary delay and hazard to the creditors, and he was insisting on a sale of all the property conveyed. This the debtor was opposing, but the trustee proceeded with the sale.

The trustee and the purchaser at his sale of the dwelling now insist that the sale was made by the trustee with the consent and approval of B. P. Woodward, the debtor, and their chief reliance is upon the testimony of the trustee, whose testimony on this subject is as follows:

"I do not remember whether it was suggested by me or by Mr. B. P. Woodward and the lien creditors, that if a sale of the property be had, and Mr. B. P. Woodward remain in possession of the property until the following January 1st, or the remainder of the year in which the sale was made. Mr. Howard said he would confer with Mr. Woodward concerning this, and I remember distinctly that he returned and told me that that would be satisfactory to Mr. Woodward. I did not proceed to sell the property until this information was given me by Mr. Howard. I then proceeded with the sale in front of the bank, as advertised, but before either piece of the property was offered I made the statement that the farm would be sold subject to delivery on the first day of January following, and that the rents, issues and profits thereof would belong to Mr. B. P. Woodward during the present year, that is the year of the sale, and the sale was accordingly had."

The trustee is the only witness who testifies to these facts, and it is by no means clear that B. P. Woodward meant by this concession of the rents to authorize, or consent to, a sale of the residue of his property after such strenuous efforts to prevent it. Even with the reservation of the rents, the farm sold for more than enough to pay the debt secured, and this doubtless corresponded with the preconceived opinion of the debtor. Moreover, the witness states "that if a sale of *the* property be had, and B. P. Woodward remain in possession of *the* property until the following January," etc. (italics supplied); thus showing that the statements referred to by the witness were restricted to the farm, as he was not accorded and did not have the possession of any of the property after the sale except the farm. Furthermore, it is not unusual for creditors in such cases to make concessions of that kind to an insolvent debtor and postpone the time of occupancy by the purchaser. The concession in this case, which seems to

have been made after the trustee had announced his pur-
pose to sell all of the property, cannot be construed into an
acquiescence in, or consent to, such declared purpose of the
trustee in the face of the positive evidence of the disin-
terested witness Howard, that he "then-requested him not
to sell any more than enough property to satisfy the deed
of trust of Mrs. Pattie Story," and of B. P. Woodward, the
debtor, who testifies that "Mr. Story promised that the
sale would stop as soon as the deed of trust was satisfied."
As no sale could be forced except under the first deed, and
as the debtor was making strenuous efforts to prevent a
sale even under that, it is not reasonable to suppose that
his whole attitude towards the subject would be suddenly
changed and that he would consent to a sale of all the prop-
erty conveyed, merely to save rent for nine months, when
it was wholly unnecessary for the payment of the debt for
which alone his property could be then sold. We do not
think that he is estopped, either by his words or conduct,
from objecting to the sale. In our view of the evidence,
the sales of the dwelling and of the factory lot, were made
after the trustee had sold sufficient property to discharge
the debt secured by the deed under which he was acting,
and without the approval or consent of B. P. Woodward,
the grantor in said deed. We must consider, therefore, the
effect of these sales.

The rule of *caveat emptor* applies with full force to sales
made under deeds of trust to secure creditors. The deed
is the chart by which the trustee is to be governed. He is
a special agent with designated powers, and a purchaser
at a sale made by him takes upon himself the risk not only
of the fairness of the sale, but of the regularity thereof, and
of his compliance with all the substantial requirements of
the instrument under which he acts. Such purchaser is
chargeable with notice of the extent and limitation of the
trustee's powers. He is bound not only by *actual* notice,

but by *constructive* notice as well, which is the same in effect as actual notice. If he has notice, actual or constructive, that the trustee is exceeding his authority in making the sale, or is not complying substantially with the terms of the instrument creating the power of sale, he does not occupy the position of a purchaser without notice. *Norman v. Hill,* 2 Pat. & H. 676; *Wissler v. Craig,* 80 Va. 22, 32; *Sutton v. Sutton,* 7 Gratt. (48 Va.) 234, 56 Am. Dec. 109; *Wells v. Estes* (154 Mo. 291), 55 S. W. 255; *Shippen v. Whittier,* 117 Ill. 282, 7 N. E. 642; *Kenney v. Jefferson County Bank* (12 Colo. App. 24), 54 Pac. 404; *Improvement Co. v. Whitehead,* 25 Colo. 354, 54 Pac. 1023, 71 Am. St. Rep. 140.

In the instant case, J. Davis Woodward, the purchaser at the trustee's sale, had constructive notice of the contents of the deed under which he purchased, and of the amount of Mrs. Story's debt, and, being the purchaser of the farm, knew that the farm had brought ample to pay that debt. He knew, therefore, that the deed to secure Mrs. Story's debt had served its purpose, and that it was improper for the trustee to undertake to make further sales under that deed, and that any such sales would at the least be irregular.

The courts are not agreed as to the rights at law of a purchaser at an irregular sale by a trustee who has paid his money and obtained a deed from the trustee. A number of States, including Kentucky, Tennessee and Texas, hold that the sale is a nullity. Probably a majority, including Alabama, Illinois, Missouri, New York, North Carolina, Virginia and West Virginia, hold the sale valid at law, and that the legal title which is vested in the trustee may be conveyed by him without compliance with the conditions named in the deed. The basis of this doctrine is said to be that the trustee has an estate coupled with an interest and not a mere naked power. *Sulphur Mines Co. v. Thompson,* 93 Va. 293, 25 S. E. 232; *Dryden v. Stephens,* 19 W. Va. 1.

47

For a collection of cases in other States, see 28 Am. & Eng. Ency. Law (2d ed.) 785-6. But the rule is otherwise in equity. In that tribunal, the title of such a purchaser will not be upheld unless there has been at least a substantial compliance with the terms of the deed conferring the power of sale, and if a sale is made after the debt secured has been paid, it will be set aside. *Wasserman* v. *Metzger*, 105 Va. 744, 54 S. E. 893, 7 L. R. A. (N. S.) 1019; *Gibson* v. *Jones*, 5 Leigh (32 Va.) 370.

In *Stephens* v. *Clay*, 17 Colo. 489, 30 Pac. 43, 31 Am. St. Rep. 328, it is said:

"Trust deeds given as security, and mortgages containing a power of sale, vest the legal title in the trustee. The equity of redemption or equitable title remains in the mortgagor or 'trustor,' i. e., the owner. The legal title of the trustee is supplemented by a power which authorizes him, upon default in payment of the mortgage debt, to advertise and sell the property; the right to exercise this power, as we shall presently see, being dependent upon his possession of such legal title. The object of the power of sale is not to enable him to convey the legal title vested in himself, but to clothe him with authority to sell and convey the equitable title remaining in the trustor. He may divest himself of the legal title without compliance with the conditions of the trust. But a sale and deed, except in strict compliance with the power specified, is of no effect whatever, so far as the trustor's equitable estate is concerned. If the trustee, in disobedience of the trust conditions, by deed transfer the legal title, his grantee takes only the trustee's interest. He steps into the trustee's shoes, so to speak, and holds subject to all received rights of the trustor. Neither courts of law nor courts of equity regard the trustee's deed as absolutely void. Both recognize the fact that it conveys the legal title. The difference is, that the grantee's title or ownership cannot be challenged at law, while equity treats

him as a successor to the trust and protects the trustor's estate. Equity does not vacate the trustee's deed and regard the title as remaining in him."

In a monographic note by Judge Freeman to *Tyler* v. *Herring*, 67 Miss. 169, 6 So. 840, 19 Am. St. Rep. at pages 274, 278, it is said:

"If a trust has been created merely for the purpose of securing the payment of a debt, and the power of sale is to be exercised in default of such payment, the weight of authority favors the rule that the continued existence of the debt is essential to the continuation of the power of sale, and that a sale is void if made after the debt has been paid: *Penny* v. *Cook*, 19 Iowa, 538; *Mills* v. *Traylor*, 30 Tex. 7; *Murdock* v. *Johnson*, 7 Cold. (Tenn.) 605; or after a tender of payment has been made: *Welch* v. *Greenalage*, 2 Heisk. (Tenn.) 209. It is impossible for an intending purchaser to know with certainty whether or not a debt, to secure the payment of which a trust deed has been given, is fully paid. The application of this rule is attended with occasional hardships, but it is difficult to deny that the rule itself follows as an inevitable result of the other rule, that when the purposes of a trust have been fully accomplished the estate of the trustee ceases. The rule is also, in many instances, the logical and necessary result of another rule, to the effect that a power to sell upon default in the payment of a debt or other obligation makes such default a condition precedent to the existence of the power, and that the power can never precede the existence of such condition. Nevertheless, there are cases maintaining that a purchaser in good faith cannot be deprived of his purchase by showing that an accounting between the trustee and the debtor would result in the establishment of the fact that the debt had been fully paid: *Thompson* v. *McKay*, 41 Cal. 221.

"Whoever acquires title from a trustee when the instrument creating the trust shows the purpose for which the

trustee holds title, and the terms and conditions upon which he is authorized to sell and convey, must take notice of such terms and conditions, and can never maintain a claim of title, the maintenance of which is based upon his ignorance thereof. In other words, he is not an innocent purchaser, and his title must fail if it is shown that the contingency upon which the trustee was entitled to sell and convey has never occurred: *Hill* v. *Den*, 54 Cal. 21; *Huse* v. *Den*, 85 Cal. 399 [24 Pac. 790, 20 Am. St. Rep. 232].

"The creator of a trust, the trustee of which is to have a power of sale, may impose any restraint upon such power which he may consider proper, and unless it is in contravention of law, its observance is essential to the valid execution of the power. The restraint may be in regard either to the cause of sale or the proceedings to be pursued when a cause of sale exists. The power to sell may be in abeyance until the happening of some contingency, upon which, and not before, the grantor of the trust has declared it may or shall be exercised. In the absence of the contingency, there is no existing power of sale. Thus a trustee may be given power to sell, subject to the approval of the person who created the trust, or with the assent of the beneficiary, or of the tenant for life, or of some other person. If so, the power is not in being in the absence of such approval or assent, and any conveyance which the trustee may make is unwarranted: *Sprague* v. *Edwards*, 48 Cal. 239; *Mortlock* v. *Buller*, 10 Ves. 308; *Bateman* v. *Davis*, 3 Madd. 98; *Wright* v. *Wakeford*, 17 Ves. 454; *Rickett's Trust*, 1 Johns. & H. 70."

It is true that the trustee had the power to make a deed to the purchaser in the instant case, in the sense that he was invested with the legal title and could convey that legal title to another, and the grantee would be the owner at law, but it is not true that the grantee would thereby acquire the beneficial ownership of the land as between him and the grantor in the trust deed.

As said by Moncure, J., in *Michie* v. *Jeffries*, 21 Gratt. (62 Va.) 334: "It is the duty of the trustee not to sell more of the trust subject than the purposes of the trust require, even though the deed direct him, in case of default, to sell the trust subject without saying, 'or so much thereof as may be necessary to satisfy the purposes of the trust.' That is always implied, unless a contrary intention plainly appears." See also, *Cleaver* v. *Matthews*, 83 Va. 801, 3 S. E. 439. To the same effect, see *Waldo* v. *Williams*, 2 Scam. (3 Ill.) 470.

In *Grover* v. *Fox*, 36 Mich. 461, it is said: "When enough had been sold to satisfy the mortgage deed and all costs and expenses, the power was exhausted and the holders of the mortgage were without authority to make sale of more parcels."

In *Baker* v. *Halligan*, 75 Mo. 435, it is said: "When enough has been realized from the sale of a portion of the property conveyed by a deed of trust to pay the debt, the trustee's power is at an end and any further sale is a nullity."

In *Gunnell* v. *Cockerill*, 79 Ill. 84, cited by the appellant, it is said: "A purchaser under a trust deed containing a power of sale is chargeable with notice of defects and irregularities attending the sale, and their effect cannot be evaded by him. Carswell was, therefore, bound to know whether proper notice was given by the trustee of the sale, and whether the sale was made at a time and in the manner required by the power contained in the deed of trust, but as to remote and subsequent purchasers, the rule is different. *Hamilton* v. *Lubukee*, 51 Ill. 415 [99 Am. Dec. 562]."

In the instant case, J. W. Smith was not a remote or subsequent purchaser, as we shall presently see.

In *Preston* v. *Johnson*, 105 Va. 238, 53 S. E. 1, it is held that "if a trust deed requires the trustee to advertise the time, *terms* and place of sale before making sale, and he

advertises the time and place of sale, but says nothing as to the terms, the sale made by him will be set aside as invalid at the instance of the grantor, or a prior grantee from him, who was ignorant of the time and place of sale. It is the duty of a trustee, in executing the trust, to conform substantially in all material particulars to the stipulations of the deed under which he acts."

It is apparent, therefore, that a court of equity will not permit a grantor in trust to be deprived of his property by an unauthorized act of the trustee, and will set aside a sale and conveyance where the trustee has exceeded the authority conferred upon him, or sold the grantor's land after the purposes of the trust have been accomplished, and especially where the purchaser has notice, actual or constructive, of the facts.

Counsel for the appellant, Smith, also take the position that the equities of Smith, the purchaser, are at least equal to those of the grantor, Woodward, and, as Smith has paid his money and obtained a deed, they invoke the maxim that where the equities are equal the law will prevail. But the equities are by no means equal. Woodward holds by far the better position of the two. He had no control over the sale by the trustee, and did all in his power to prevent it, whereas the trustee had no authority, in equity, to make the sale, and Smith was chargeable with notice thereof, and to this extent participated in the act. He was chargeable with notice of the amount of Mrs. Story's debt, and had actual knowledge of the fact that the farm had already been sold for more than sufficient to satisfy it and the cost. He was not a *bona fide* purchaser, because he had notice.

In view of the fact that the farm had already sold for amply sufficient to pay off the whole of the debt secured by the deed under which the trustee was acting, we confess we are unable to appreciate the force of the argument of counsel for the trustee, that the latter had the right to con-

tinue to sell other property, because "here it is submitted we have an agreement arising by act *in pais,* whereby, upon the grantor's default, the trustee is expressly *required*—not merely *authorized* in his discretion—but required to make sale of the 'property * * * at public auction to the highest bidder for cash.' It does not merely vest in the trustee the title to the property, in order to secure the payment of the debt mentioned in the deed—does not merely create a lien to secure the payment of the debt, but expressly provides that the trustee, upon the request of the creditor, shall sell the property conveyed, and distribute the money in a specific manner."

J. Davis Woodward was not an innocent purchaser. He had full notice of the fact that the farm had sold for enough to pay the debt secured, that the deed had accomplished its purpose, and that it was improper for the trustee to proceed to sell the dwelling and factory lot. Nor do we think that J. W. Smith, the appellant, stands on any higher ground. He was present at the sale and bid as high as $3,600 on the dwelling which was cried out to J. Davis Woodward at $3,650, and also had notice of the same facts with which it is stated above that J. Davis Woodward was chargeable. Nor was he a remote purchaser. He took his deed directly from the trustee. He gave J. Davis Woodward $100 for his bargain, and the property was "turned over to Dr. Smith," or as Woodward states it, "I turned the property over to Dr. Smith simply to get rid of any more trouble concerning the matter." Smith paid Woodward $100, and then settled with the trustee for the $3,650 of purchase money which Woodward had agreed to pay the trustee for the property. This took place on the day of sale by the trustee. Smith himself admits that he just took Woodward's bid and paid him $100 for it. Under these circumstances, he cannot stand on any higher footing than if the

property had been cried out to him at the trustee's sale. We are of opinion that the circuit court committed no error in setting aside the deed to the appellant, J. W. Smith.

The appellant, J. W. Smith, claims for improvements placed on the dwelling after he became the purchaser thereof. The circuit court refused to make any allowance therefor, and in this we think there was no error. The statute allowing recovery for improvements restricts it to one "holding the premises under a title believed by him * * * to be good." Code, section 2760. This court has held that this section has no application to one who is not a *bona fide* purchaser, and that a person with notice, actual or constructive, of infirmity in his title cannot recover for improvements. *Burton* v. *Mill,* 78 Va. 468; *Effinger* v. *Hall,* 81 Va. 94; *Fulkerson* v. *Taylor,* 102 Va. 314; 46 S. E. 309; *Nixdorf* v. *Blount,* 111 Va. 127, 68 S. E. 258; *McDonald* v. *Rothgeb,* 112 Va. 749, 72 S. E. 692, Ann. Cas. 1916 B, 63. Means of knowledge, coupled with the duty of using them, are in equity equivalent to knowledge itself. *Cordova* v. *Hood,* 17 Wall. 1, 21 L. Ed. 587. It is useless to repeat here what has already been said about appellant's knowledge or means of knowledge. It must suffice to say that he had notice, or was chargeable with notice, of such defects in the title he was obtaining from the trustee as bars him from recovery for improvements.

Much has been said in the argument about the negligent failure of B. P. Woodward, the debtor, to give notice at an earlier date of his objection to the sale, and of his standing by and seeing the purchaser put valuable improvements on the place without making known his objections. The debtor lived in the city of Norfolk, seventy-five miles from the property, and the record fails to disclose that he saw the property or knew that any improvements were being made thereon, from the day of sale until just before this suit was brought. It is not shown how much of the improvement

was made before, and how much after, this suit was brought, and it is not clear that the alleged improvements, consisting chiefly of painting and plastering were necessary, or that the value of the premises was actually increased thereby. See Code, section 2763. However this may be, this suit to set aside the sale was brought within about forty days after the date of the sale, and thirty days after the appellant obtained his deed. The complainant was not negligent in bringing his suit. *Walker* v. *Beauchler,* 27 Gratt. (68 Va.) 511; *Wasserman* v. *Metzger, supra.*

It is urgently insisted that the decree of the circuit court should be reversed because the proper parties were not before the court, and the court could not properly adjust the rights of the parties, if the sale were set aside, unless all parties were before it. The only person not before the court at the time the decree was entered, and whose absence is complained of, was Mrs. Pattie Story, the creditor secured in the first deed. While it is true that a part of Mrs. Story's debt was originally paid from the proceeds of the dwelling purchased by Smith, yet before the decree complained of was entered, the terms of sale of the farm and factory had been complied with, and the court, with ample funds in hand, by the decree complained of, readjusted the rights of the parties so as to indemnify the other funds from the proceeds of the sale of the farm and thereby in effect to discharge the full amount of Mrs. Story's debt from the proceeds of the farm, and leave the residue of the proceeds of the farm and the whole of the proceeds of the dwelling and peanut factory to the creditors secured by the second and third deeds of trust. This was a proper method of procedure, and as Mrs. Story's debt was thus wholly discharged from the proceeds of the farm, she was neither a necessary nor proper party. The decree then cancelled the credits on the bonds of B. P. Woodward to F. P. Pope and J. Davis Woodward, respectively, and directed that said

bonds be returned with credits cancelled, and also directed the trustee to refund to J. W. Smith the $3,650 collected of him. The effect of this was to reinstate the second and third deeds of trust. It would have been more regular to have substituted Smith to the lien of the second and third deeds of trust as a security for his debt, but it was admitted at the bar that the trustee is amply solvent, and as he can indemnify himself from the proceeds of sales under the second and third deeds of trust, it would seem that substantial justice has been reached, without prejudice to the rights of any of the parties. Where substantial justice has been reached and the rights of all parties in interest have been adequately safeguarded by the decree appealed from, this court will not be astute to find technical objections by which such decree may be reversed.

*Affirmed.*